577 S.E.2d 460

**The STATE, Respondent,**

v.

**Murray Roger ADKINS, III, Appellant.**

**No. 3585.**

Court of Appeals of South Carolina.

Heard Dec. 11, 2002.
Decided Jan. 6, 2003.
Rehearing Denied March 20, 2003.

---

314

Assistant Appellate Defender Robert M. Dudek, of Columbia, for Appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka and Senior Assistant Attorney General William Edgar Salter, III, all of Columbia; and Solicitor John R. Justice, of Chester, for Respondent.

ANDERSON, J.

Murray Adkins was convicted of the murder of Greg Sims and possession of a firearm during the commission of a violent crime. He appeals his convictions asserting the judge erred in the jury instructions and allowing testimony about the victim's participation in high school athletics. We affirm.

### FACTS/PROCEDURAL BACKGROUND

Josh Cramer, Tyrone Anthony, Marcus Hinton, Ryan Sims, and Greg Sims, the victim in this case, were involved in a drug transaction that went awry and ended in the deaths of three people. Cramer received a telephone call from Greg Sims, who told Cramer that he knew some people who wanted to purchase drugs. Anthony, Hinton, Greg Sims, and Ryan Sims rode to Cramer's house.

Upon arriving at Cramer's house, Greg Sims exited the vehicle and told Cramer the occupants of the vehicle wanted to

"look" at the drugs. Cramer entered the vehicle and sat in the back seat. Greg Sims stayed at Cramer's house while Anthony, Hinton, Cramer, and Ryan Sims drove away. Cramer directed Hinton to drive to a location less than one mile from his house so the men could inspect the pound of marijuana Cramer had brought with him.

When Hinton stopped the car, Anthony asked to see the marijuana. Cramer gave the marijuana to Anthony, who then transferred it to Ryan Sims. Ryan Sims immediately jumped out of the car and ran away with the marijuana. Cramer stated that Hinton and Anthony pretended to look for Ryan Sims. Thereafter, Hinton drove back to Cramer's house and picked up Greg Sims. After riding around unsuccessfully searching for Ryan Sims, Cramer shot both Anthony and Hinton in the head. Greg Sims helped Cramer put the bodies of Anthony and Hinton in the trunk of the car Hinton had been driving.

Cramer and Greg Sims went to Kimbell Lee's house to ask for Lee's assistance in disposing the bodies. Cramer stated: "I told [Lee] I needed his help; that I was in way over my head." Lee agreed to help. According to Cramer, Lee declared "that he would page Murray [Adkins]." Cramer testified as to a conversation he and Lee had regarding Greg Sims and Cramer's fear that Sims would tell the police about the killings: "Well, I did say something to [Lee] about what I felt like I had to do.... That was to kill Greg [Sims].... I told him what I was going to do next."

After driving Hinton's car to a secluded area and leaving it, Cramer, along with Greg Sims, rode with Lee to an apartment complex where Murray Adkins was visiting with Anna Stanley. Lee went to the door of the apartment and asked Adkins to step outside. Lee informed Adkins that Cramer "had just killed two people." Adkins went back inside and told Stanley they had to leave. Cramer, Lee, and Greg Sims rode to Lee's uncle's home, where they picked up Adkins, who had been dropped off at the house by Stanley.

Cramer, Greg Sims, Lee, and Adkins collectively decided the car with the bodies in it should be burned. Lee drove Cramer and Greg Sims back to the car Hinton had been driving and left the two men there. Cramer and Greg Sims set the car on fire. Afterward, they started running toward

the place where they planned to meet Lee and Adkins. Cramer pointed a gun at Greg Sims's head and pulled the trigger. However, the gun did not fire.

Cramer and Greg Sims then returned to Lee's car. Lee drove Cramer home. Cramer testified: "I got out and went in. And [Adkins] come up to the window. And he asked me for my nine millimeter. And I told him there was no more bullets in it. Then he asked for—I had a rifle; but I told him that it had not been shot. . . . The firing pin had broke, and it had not been fired." According to Cramer, Adkins told him "that he would just get his own gun." Lee corroborated, to some extent, Cramer's account of what occurred when the men arrived at Cramer's house. Lee averred that "[w]hen [Cramer] got out, Murray Adkins got out of the car and them two went around the back of [Cramer's] house" and the two men were "alone for some period of time." Lee, Adkins, and Greg Sims left Cramer's house.

Adkins instructed Lee to drive to a location where Adkins claimed he wanted to "get rid of" Cramer's gun. Once the men reached this area, they exited the car. Lee stated Murray "said 'go look for a place to stash [the gun] like a tree trunk or a rock.'" Lee testified: "[A]bout that time I looked up, and [Adkins] just raised up and just started shooting; just shot Greg [Sims] about six or seven times."

During the early morning hours, Cramer returned "to the original scene of the drug transaction" to retrieve his pager which he had dropped. When Cramer checked his pager, he noticed that he had a voice mail. Cramer declared: "I called my pager to get the voice mail. . . . [I]t sounded like [Adkins's] voice. . . . All it said was 'I took care of that.'"

After police unraveled the story, Adkins was charged with Greg Sims's murder and possession of a firearm during the commission of a violent crime. Adkins did not testify during the trial. He was convicted of both offenses.

### *LAW/ANALYSIS*

### I. JURY CHARGE ISSUES

#### A. Appellate Review of Jury Charges

Generally, the trial judge is required to charge only the current and correct law of South Carolina. *State v.*

*Burkhart,* 350 S.C. 252, 565 S.E.2d 298 (2002); *State v. Shuler,* 344 S.C. 604, 545 S.E.2d 805 (2001); *Clark v. Cantrell,* 339 S.C. 369, 529 S.E.2d 528 (2000); *Cohens v. Atkins,* 333 S.C. 345, 509 S.E.2d 286 (Ct.App.1998); *see also State v. Buckner,* 341 S.C. 241, 534 S.E.2d 15 (Ct.App.2000) (holding jury charge is proper if, as a whole, it is free from error and reflects current and correct law of South Carolina). In reviewing jury charges for error, we must consider the court's jury charge as a whole in light of the evidence and issues presented at trial. *Burroughs & Chapin Co. v. South Carolina Dep't of Transp.,* 352 S.C. 535, 574 S.E.2d 751 (Ct.App.2002); *see also State v. Todd,* 290 S.C. 212, 349 S.E.2d 339 (1986) (when reviewing jury charge for error, Court must consider charge as a whole); *see also Welch v. Epstein,* 342 S.C. 279, 536 S.E.2d 408 (Ct.App.2000) (when reviewing jury charge for alleged error, appellate court must consider charge as a whole in light of evidence and issues presented at trial). If, as a whole, the charges are reasonably free from error, isolated portions which might be misleading do not constitute reversible error. *Keaton ex rel. Foster v. Greenville Hosp. Sys.,* 334 S.C. 488, 514 S.E.2d 570 (1999); *State v. Sims,* 304 S.C. 409, 405 S.E.2d 377 (1991); *State v. Jackson,* 297 S.C. 523, 377 S.E.2d 570 (1989); *see also State v. Grippon,* 327 S.C. 79, 489 S.E.2d 462 (1997) (jury instructions should be considered as a whole, and if as a whole they are free from error, any isolated portions which may be misleading do not constitute reversible error); *Waldrup v. Metropolitan Life Ins. Co.,* 274 S.C. 344, 263 S.E.2d 652 (1980) (stating appellate court must view jury charge as a whole before assigning prejudicial error to a discrete portion of the charge); *State v. Hicks,* 305 S.C. 277, 407 S.E.2d 907 (Ct.App.1991) (in reviewing challenged jury charge, judge's instructions must be considered as a whole; Court of Appeals will not find error based upon isolated excerpts which, standing alone, might be misleading).

A jury charge is correct if, when the charge is read as a whole, it contains the correct definition and adequately covers the law. *In re McCracken,* 346 S.C. 87, 551 S.E.2d 235 (2001); *State v. Johnson,* 315 S.C. 485, 445 S.E.2d 637 (1994); *State v. Burton,* 302 S.C. 494, 397 S.E.2d 90 (1990) (charge is sufficient if, when considered as a whole, it covers law applicable to case). The substance of the law is what must be

charged to the jury, not any particular verbiage. *Burkhart,* 350 S.C. at 261, 565 S.E.2d at 303; *Keaton,* 334 S.C. at 496, 514 S.E.2d at 574; *State v. Smith,* 315 S.C. 547, 446 S.E.2d 411 (1994).

A jury charge which is substantially correct and covers the law does not require reversal. *Keaton,* 334 S.C. at 497–98, 514 S.E.2d at 575; *State v. Foust,* 325 S.C. 12, 479 S.E.2d 50 (1996); *State v. Rabon,* 275 S.C. 459, 272 S.E.2d 634 (1980); *see also State v. Hoffman,* 312 S.C. 386, 440 S.E.2d 869 (1994) (as long as the charge is substantially correct and covers the law, reversal is not required). To warrant reversal, a trial judge's refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant. *State v. Hughey,* 339 S.C. 439, 529 S.E.2d 721 (2000); *State v. Harrison,* 343 S.C. 165, 539 S.E.2d 71 (Ct.App.2000); *see also Priest v. Scott,* 266 S.C. 321, 223 S.E.2d 36 (1976) (in general, an alleged error in a portion of a charge must be considered in light of the whole charge, and must be prejudicial to the appellant to warrant a new trial).

### B. Jury Charge—Exercise of the Right to Remain Silent

Adkins argues he is entitled to a new trial because the judge, in charging the jury, used the term "failure to testify" to refer to Adkins's choice to exercise his right to remain silent. We disagree.

Under the United States and South Carolina Constitutions, a defendant has a right to remain silent and to not testify during his trial. *See* U.S. Const. amend. V; S.C. Const. art. I, § 12. To make this right meaningful, our courts have held that it is impermissible for the State to comment directly or indirectly upon a defendant's failure to testify at trial. *See Gill v. State,* 346 S.C. 209, 552 S.E.2d 26 (2001); *Johnson v. State,* 325 S.C. 182, 480 S.E.2d 733 (1997); *see also Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (holding accused has right to remain silent and the exercise of that right cannot be used against him); *State v. King,* 349 S.C. 142, 561 S.E.2d 640 (Ct.App.2002) (as a rule, solicitor cannot comment directly or indirectly upon defendant's failure to testify at trial). "However, even improper comments on a defendant's failure to testify do not au-

tomatically require reversal if they are not prejudicial to the defendant." *Gill,* 346 S.C. at 221, 552 S.E.2d at 33. "The defendant bears the burden of demonstrating that improper comments on his refusal to testify deprived him of a fair trial." *Id.* "Furthermore, even if the solicitor makes an improper comment on the defendant's failure to testify, a curative instruction emphasizing the jury cannot consider [the] defendant's failure to testify against him will cure any potential error." *Id.*

The judge's jury charge regarding the defendant's failure to testify reads:

I charge you now and emphasize to you that the failure of the defendant in the trial of this case to testify in his own behalf is not a factor to be considered by you in any way in your deliberations and in your consideration on the question of the guilt or the innocence of the defendant. I charge you, it must not be considered by you in any manner whatsoever against the defendant or mitigate against him in any respect whatsoever.

Ladies and gentlemen, a defendant has a constitutional right not to testify, and the assertion of such constitutional right cannot and must not be considered by you in your deliberations. Under your sworn oath, you are to reach no inference and draw no conclusion whatsoever from the fact that the defendant did not testify in this case. The failure of the defendant to testify should not even be discussed by you in the jury room. Ladies and gentlemen, the burden of proof as I have stated to you is upon the State of South Carolina. It is not incumbent upon a defendant to prove his innocence, but the burden of proof always remains upon the State of South Carolina to prove guilt beyond a reasonable doubt. And failure of a defendant to testify is not a factor to be considered by you in determining the guilt or the innocence of the defendant.

When defense counsel objected to the charge, the following colloquy occurred:

[Defense Counsel]: Your Honor, [I object to] the court's construction regarding the failure of the defendant to testify which we had requested and we talked about yesterday. In that instruction several times as part of that instruction and

as part of an instruction that may be a standard instruction, we talk about the failure of the defendant to testify. The failure of the defendant to testify, . . . that wording in and of itself implies that the defendant failed to do something; that he had an obligation he had to meet and he failed to do it. And as I said, I understand there may be a standard instruction.

The Court: Well, that's what [your co-counsel] asked [m]e to charge yesterday, sir.

[Defense Counsel]: Your Honor—

The Court: I was going to use the word[s] "remain silent;" and [your co-counsel] asked that we use the word[s] "failure to testify" which I ordered the charge for that. I'll note your exception.

We agree with Adkins that the trial court erred in using the phrase "failure to testify" in the jury charge. Although the charge instructs the jury they cannot consider the defendant's failure to testify during their deliberations, the very use of the phrase "failure to testify" creates an inference that the defendant did not fulfill an obligation or duty. The United States and South Carolina Constitutions provide that there is no obligation or duty upon a defendant to testify on his behalf during a criminal trial. Moreover, our Supreme Court, in *Gill v. State,* 346 S.C. 209, 552 S.E.2d 26 (2001), found it is impermissible for the State to comment directly or indirectly upon a defendant's failure to testify at trial. We disapprove of the use of this language when explaining to the jury the impact of a defendant choosing not to testify on his behalf during a criminal trial.

However, we reject Adkins's argument that he is entitled to a new trial. First, when viewing the challenged portion of the jury charge as a whole with the rest of the judge's instruction, we find the trial court adequately charged the law regarding the defendant's right to remain silent and not to testify during his criminal trial.

Second, Adkins's attorney was the one who requested the charge using the language "failure to testify." A party cannot complain of an error which his own conduct created. *State v. Stroman,* 281 S.C. 508, 316 S.E.2d 395 (1984); *see also*

*State v. Whipple,* 324 S.C. 43, 476 S.E.2d 683 (1996) (party cannot complain of error which his own conduct has induced).

For the benefit of the Bench and the Bar, we propose the following jury charge be used when instructing a jury in regard to a defendant's decision not to testify during a criminal trial:

> The defendant in this case has not testified. This is his constitutional right, and it is not a circumstance that you can take into your consideration, or even allow to enter into your discussion in your jury room. Under the Constitution of South Carolina and under the United States Constitution, it is his constitutional right not to testify. The burden of proof is upon the State of South Carolina to establish his guilt by competent testimony beyond a reasonable doubt.

> The fact that the defendant did not take the witness stand and testify in his own behalf does not create any inference against him; the jury must not permit that fact to weigh in the slightest degree against this defendant, nor should this fact enter into the discussions or deliberations of the jury in any manner.

### C. Jury Charge—Definition of Reasonable Doubt—State's Burden of Proof

Adkins contends he is entitled to a new trial because the judge erred when charging the jury on the definition of reasonable doubt and the State's burden of proof. Additionally, Adkins asserts the court erred in failing to give a curative instruction. We disagree.

A defendant is not required to present a defense and can instead rely entirely on the weakness of the State's case since the State has the burden of proving guilt beyond a reasonable doubt. *See State v. Posey,* 269 S.C. 500, 238 S.E.2d 176 (1977).

The judge used the following language when defining reasonable doubt and the State's burden of proof:

> If ... upon the whole case you have a reasonable doubt as to the guilt or the innocence of the defendant, he would be entitled to that reasonable doubt and would be entitled to an acquittal and a verdict of not guilty at your hands. **Like-**

**wise, should you have a reasonable doubt as to whether or not the defendant has made out his defense,** then he would be entitled to that reasonable doubt and would be entitled to an acquittal and a verdict of not guilty.

Clearly, this portion of the jury charge was in error because it states that reasonable doubt relates to whether the defendant has proved his defense. However, the charge, when considered as a whole, was correct.

The judge instructed:

These pleas of not guilty by [Adkins] places [sic] the burden of proof on the State of South Carolina to prove the guilt of the defendant beyond a reasonable doubt before you, the jury, could convict the defendant and find him guilty.

I charge you, the Defendant Mr. Adkins, is presumed in law innocent of the charges contained in each of these indictments. Ladies and gentlemen, it is a cardinal and fundamental rule of the law of evidence that a defendant, irrespective of the enormity of the charges against him[,] will always be presumed innocent of the crimes for which he is indicted unless and until the guilt of the defendant has been proved by evidence which satisfies the jury of the guilt of the defendant beyond a reasonable doubt.

. . . .

I charge you, the presumption of innocence accompanies the defendant from the time of his appearance in this courtroom and continues with him throughout every stage of this trial and continues with him after you retire to your jury room to deliberate your verdict. Ladies and gentlemen, the presumption of innocence continues in existence to the benefit of the defendant until and unless you, the ladies and gentlemen of the trial jury, reach the conclusion that the State of South Carolina has proved the guilt of the defendant beyond a reasonable doubt. The State of South Carolina is not required to prove the guilt of a defendant beyond all doubt or beyond every doubt but beyond a reasonable doubt every doubt.

Madam forelady and ladies and gentlemen, I charge you a reasonable doubt is the kind of doubt which would cause a reasonable person to hesitate to act. I charge you that the defendant is entitled to every reasonable doubt arising in

the whole case or any defenses asserted by him. If, then, upon any issue of fact essential to a conviction and a verdict of guilty you have a reasonable doubt as to how that issue should be resolved, I charge you it would be your duty to resolve that reasonable doubt in favor of the defendant.

A defendant, ladies and gentlemen, is not required to prove his innocence; but the State of South Carolina is required in law to prove every essential element of the offense charged against the defendant by evidence which satisfies the jury of the guilt of the defendant beyond a reasonable doubt before you could convict the defendant and find him guilty....

. . . .

Ladies and gentlemen, you should weigh all of the evidence in this case, and after weighing all of the evidence in this case, if you're not convinced of the guilt of the defendant beyond a reasonable doubt, then it would be your duty to find the defendant not guilty. However, if after weighing all of the evidence in this case you are convinced of the guilt of the defendant beyond a reasonable doubt, then likewise, ladies and gentlemen, it would be your duty to convict the defendant and find him guilty.

. . . .

... Ladies and gentlemen, the burden of proof as I have stated to you is upon the State of South Carolina. It is not incumbent upon a defendant to prove his innocence, but the burden of proof always remains upon the State of South Carolina to prove guilt beyond a reasonable doubt....

When looking at the charge as a whole, the judge adequately explained that the State has the burden of proving every element of a charged offense and the defendant is not required to prove his innocence. The language defining reasonable doubt as "the kind of doubt which would cause a reasonable person to hesitate to act" is the exact language expressly approved in *State v. Manning*, 305 S.C. 413, 409 S.E.2d 372 (1991). Examining the charge in its entirety, we hold the judge adequately explicated the law on reasonable doubt and burden of proof.

## II. VICTIM'S ACTIVITIES

■■ Adkins asserts he is entitled to a new trial because the Circuit Court erred when it overruled his objection to testimony about the victim's participation in high school sports. He maintains this testimony had no relevance and was only offered to unduly prejudice the jury. We disagree.

The following colloquy occurred during the State's direct examination of Deborah Sims Swinton, the victim's mother:

Q. At that time prior to the night of March the second, how many children did you have?

A. Three.

Q. What were their names and ages?

A. Greg 17, Jeremy eight, and Madison six at the time.

Q. Okay. Greg, who of course is the victim in this case, was 17 years old?

A. Yes, sir.

Q. Was he still in high school?

A. Yes, sir.

Q. Did he have outside employment other than high school?

A. Yes, sir.

Q. What kind [of] employment did he have?

A. He was a cook at a restaurant.

Q. Did he also participate in high school sports?

[Defense Counsel]: Judge; I'm going to object to this testimony. I don't see the relevancy or the probative value of this testimony.

The Court: All right. What's the testimony offered for, Solicitor?

[The State]: I'm just laying a foundation of who it is we're talking about that's been murdered.

The Court: All right. I overrule the objection. I'll allow a little bit; but we can't get too far.

Q. Didn't he participate in high school athletics?

A. Yes, he did.

Q. What sports did he play in?

A. He played football, wrestle [sic], track, and baseball.

Thereafter, during Swinton's testimony, the State attempted to introduce a school photograph of the victim. Adkins objected and the judge sustained the objection.

The admission or exclusion of evidence is left to the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of discretion. *State v. Saltz*, 346 S.C. 114, 551 S.E.2d 240 (2001); *see also State v. Jones*, 343 S.C. 562, 541 S.E.2d 813 (2001) (trial judge's decision to admit or exclude evidence is reviewed on appeal under abuse of discretion standard). The trial judge's determination of admissibility will not be disturbed absent abuse of discretion resulting in prejudice to the complaining party. *State v. Irick*, 344 S.C. 460, 545 S.E.2d 282 (2001); *State v. Hughey*, 339 S.C. 439, 529 S.E.2d 721 (2000); *see also State v. Brazell*, 325 S.C. 65, 480 S.E.2d 64 (1997) (trial judge has considerable latitude in ruling on admissibility of evidence and his decision will not be disturbed absent prejudicial abuse of discretion). An abuse of discretion arises from an error of law or a factual conclusion that is without evidentiary support. *Irick*, 344 S.C. at 464, 545 S.E.2d at 284.

Adkins cites *State v. Langley*, 334 S.C. 643, 515 S.E.2d 98 (1999), in support of his argument. In *Langley*, the victim's sister described how the victim acquired a family nickname and testified about the victim's family. She stated the victim attended Burke High School and played in the band. In addition, the Solicitor introduced a photograph of the victim which the court allowed over defense objection. The Supreme Court ruled that admitting the photograph and the testimony about the victim and the victim's family was not relevant and should have been excluded. *Id.*

This case differs from *Langley*. Swinton testified in a very brief manner regarding the nature of the victim's activities. The judge sustained Adkins's objection to the photograph of the victim. Swinton did not go into detail about the victim's relationship with the family or how he acquired any family nicknames. Under these facts, allowing testimony that the victim played sports and attended Northwestern High School, without more, does not rise to the level of abuse of discretion. The judge did not err when he overruled Adkins's objection to Swinton's testimony.

### *CONCLUSION*

Accordingly, Adkins's convictions are

**AFFIRMED.**

HEARN, C.J., and CURETON, J., concur.