725 S.E.2d 724

**The STATE, Respondent,**

**v.**

**Shawn Antonio MILLER, Appellant.**

**No. 4965.**

Court of Appeals of South Carolina.

Heard Feb. 16, 2012.

Decided April 25, 2012.

Rehearing Denied May 25, 2012.

Appellate Defender Breen Richard Stevens, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney

General Salley W. Elliott, and Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia; and Solicitor Barry J. Barnette, of Spartanburg, for Respondent.

CURETON, A.J.

Shawn Antonio Miller appeals his convictions and sentences for murder and the possession of a firearm during the commission of a violent crime, arguing the trial court erred in instructing the jury it could infer malice from the use of a deadly weapon, despite the presentation of evidence that would mitigate or reduce the offense. We reverse and remand for a new trial.

## FACTS

On October 26, 2007, Miller and his friend, Christopher Blount, visited a crack house. At some point, Miller indicated he was ready to leave. When Blount refused to leave, Miller produced a handgun, which discharged. Blount was hit in the abdomen and later died. Miller was indicted and tried for murder and the possession of a firearm during the commission of a violent crime.[1]

At Miller's trial, the State presented Tammy Hunter, who testified she was at the house when Blount and Miller arrived together. Hunter recalled approximately seven people were at the house, talking and joking. She stated Miller brought crack cocaine and marijuana, which he shared with the group. Miller sat down at the kitchen table, and Blount sat next to Hunter on the couch. Hunter testified she, Miller, and Blount smoked the drugs Miller had brought. Approximately forty minutes after Miller and Blount arrived, Hunter watched Miller point a black revolver at Blount and tell him to "get his bitch ass up." [2] According to Hunter, Miller repeated his order, and the gun went off. She remembered Miller screaming and saying "y'all know I didn't mean to shoot him" before he left the home with another man. Hunter and another

---

1. The indictment specified the violent crime was murder.

2. Hunter's statement to police indicated Miller told Blount to get his "punk ass" up. At trial, Hunter testified she considered the terms to be interchangeable.

person fled into the woods. The police questioned Hunter the next day, and she identified Miller as the shooter.

Joseph "Chick" Hopkins, another eyewitness, testified he sat next to Miller at the kitchen table. Hopkins watched Miller playing with the revolver, removing bullets, "like somebody that got a brand new toy," and he advised Miller three or four times to put the gun away. He described Miller as "happy" but characterized his handling of the gun as careless and reckless. According to Hopkins, just after Miller announced he was ready to leave and told Blount to get up, Miller "waved" the gun in Blount's direction and it fired.[3] Hopkins believed the shooting was unintentional. He remembered Miller appeared stunned by the gunshot.

Law enforcement officials testified they identified Miller as a suspect and eventually found him hiding in a friend's apartment. One of the arresting officers testified Miller was carrying a loaded revolver in a hip holster at the time of his arrest.[4] After a brief interview, Miller signed a statement that he was not at the house where the incident occurred, did not know anyone who lived in that area, and did not shoot anyone.

After the close of evidence, Miller requested jury instructions on accident and involuntary manslaughter as a lesser included offense of murder. Miller asserted the testimony that the shooting appeared unintentional supported an accident instruction. The trial court declined to charge accident, finding the record contained no evidence that Miller was acting lawfully or handling the weapon with reasonable care. However, it found sufficient evidence to charge the jury on involuntary manslaughter. In its closing, the State noted the jury could infer malice from the use of a deadly weapon and argued, "Ladies and gentlemen, it's right here in State's no. 17, a .38 caliber Smith and Wesson pistol, malice."

---

3. The State capitalized on Hopkins's use of the word "pointed" in his statement to police. Hopkins explained he considered pointing and waving the gun to be "the same type of gesture."

4. Ballistics testing could not exclude this gun as the one that killed Blount. Additional testing on the gun demonstrated that, although the firing mechanism appeared damaged, the safety block nonetheless prevented the weapon from firing unless the trigger was pulled fully.

The trial court instructed the jury that murder requires malice aforethought, which may be either express or implied, and the jury could infer malice: [5]

> [F]rom conduct showing a total disregard for human life. Inferred malice may also arise when the deed is done with a deadly weapon.
>
> Now, a deadly weapon is any article or instrument or substance which is likely to cause death or great bodily harm. Now, whether an instrument has been used in any particular case as a deadly weapon will depend upon the facts and circumstances of each case.... [A] gun can even be a deadly weapon[ ], even if it's not operating, if it's used in a certain fashion.

Miller objected to this instruction, arguing it could "be construed as a comment on the facts of the case, and invade the province of the jury." The trial court declined to modify the instruction.

During deliberations, the jury requested re-instruction on the charges of murder, involuntary manslaughter, and possession of a weapon during the commission of a violent crime. The trial court furnished the jury with a written copy of the instructions. Miller objected to the recharge. The State did not object, either after the initial jury charge or after the recharge.

The jury found Miller guilty of murder and the possession of a firearm during the commission of a violent crime. He received concurrent sentences of forty years' imprisonment for murder and five years' imprisonment for possession of a firearm. This appeal followed.

## STANDARD OF REVIEW

In criminal cases, appellate courts review only errors of law and will not reverse a trial court's decision concerning

---

5. The trial court's charge did not include the qualifying language set forth in *State v. Elmore*, 279 S.C. 417, 421, 308 S.E.2d 781, 784 (1983), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 69 n. 5, 406 S.E.2d 315, 328 n. 5 (1991): "this inference would be simply an evidentiary fact to be taken into consideration by you, the jury, along with other evidence in the case, and you may give it such weight as you determine it should receive."

jury instructions unless the trial court abused its discretion. *State v. Kinard,* 373 S.C. 500, 503, 646 S.E.2d 168, 169 (Ct.App.2007). "An abuse of discretion occurs when the [trial] court's decision is unsupported by the evidence or controlled by an error of law." *State v. Garris,* 394 S.C. 336, 344, 714 S.E.2d 888, 893 (Ct.App.2011).

## LAW/ANALYSIS

Miller contends the trial court's instruction to the jury that it could infer malice from the use of a deadly weapon was reversible error in view of evidence that would mitigate or reduce the offense. We agree.

"In general, the trial court is required to charge only the current and correct law of South Carolina." *Sheppard v. State,* 357 S.C. 646, 665, 594 S.E.2d 462, 472 (2004). "To warrant reversal, a trial judge's refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant." *State v. Brown,* 362 S.C. 258, 262, 607 S.E.2d 93, 95 (Ct.App.2004). "In reviewing jury charges for error, we must consider the [trial] court's jury charge as a whole in light of the evidence and issues presented at trial." *State v. Adkins,* 353 S.C. 312, 318, 577 S.E.2d 460, 463 (Ct.App.2003).

South Carolina law defines "murder" as "the killing of any person with malice aforethought, either express or implied." S.C.Code Ann. § 16–3–10 (2003). Historically, the use of a deadly weapon in a killing created first a presumption, and later a permissive inference, of malice aforethought. *State v. Belcher,* 385 S.C. 597, 602–08, 685 S.E.2d 802, 804–08 (2009). However, currently, "the 'use of a deadly weapon' implied malice instruction has no place in a murder ... prosecution where evidence is presented that would reduce, mitigate, excuse or justify the killing...." *Id.* at 610, 685 S.E.2d at 809. Noting this decision "represent[ed] a clear break from our modern precedent," the *Belcher* court held it would apply to "all cases which [we]re pending on direct review or not yet final where the issue is preserved." *Id.* at 612, 685 S.E.2d at 810.

■ Initially, we note the State argues unpersuasively that this issue is unpreserved for appellate review. "For an objection to be preserved for appellate review, the objection must

be made at the time the evidence is presented ... and with sufficient specificity to inform the circuit court judge of the point being urged by the objector." *State v. Byers,* 392 S.C. 438, 444, 710 S.E.2d 55, 58 (2011). "Error preservation rules do not require a party to use the exact name of a legal doctrine in order to preserve an issue for appellate review." *State v. Brannon,* 388 S.C. 498, 502, 697 S.E.2d 593, 595 (2010). Here, Miller acknowledged the challenged language was "probably in the standard charge" but objected that the jury might construe the inferred malice instruction as a judicial commentary on the facts of the case. The trial judge indicated he understood the objection, and Miller did not elaborate further. The State argues Miller objected purely on a constitutional basis. *See* S.C. Const. art. V, § 21 ("Judges shall not charge juries in respect to matters of fact, but shall declare the law."). The record does not support this argument: the trial court clearly charged the law, only, and Miller's objection addressed the likelihood that this charge would prejudice the jury. Accordingly, we find this issue is preserved.[6]

■ Turning to the merits, we find this appeal was pending when our supreme court decided *Belcher;* therefore, *Belcher* applies. *See Belcher,* 385 S.C. at 612, 685 S.E.2d at 810 (holding *Belcher* applies to "all cases which are pending on direct review or not yet final where the issue is preserved"). This court must evaluate the evidence adduced at trial to determine whether any of it "would reduce, mitigate, excuse or justify the killing." *Id.* at 610, 685 S.E.2d at 809; *Adkins,* 353 S.C. at 318, 577 S.E.2d at 463 ("In reviewing jury charges for error, we must consider the [trial] court's jury charge as a whole in light of the evidence and issues presented at trial." (citations omitted)).

We note that if the trial court properly charged involuntary manslaughter, the evidence supporting that charge would "reduce [or] mitigate" the charge of murder and, thus, under *Belcher* the malice inference charge was improper. The State

---

6. Similarly, the *Belcher* court recalled that the trial court had "expressed 'concern about [the charge] rising to a charge on the facts.'" 385 S.C. at 602, 685 S.E.2d at 804. Nonetheless, the *Belcher* court elected to decide the matter based on common law. *Id.*

argues, however, that because Miller was acting unlawfully while waving the gun, he was not entitled to the charge on the lesser offense. *See State v. Cabrera–Pena,* 361 S.C. 372, 381, 605 S.E.2d 522, 526 (2004) (recognizing an involuntary manslaughter instruction would have been improper because the accused was "engaged in unlawful, felonious and harmful conduct" at the time of the incident). We find it unnecessary to resolve this dispute, because we find there is evidence that mitigates the charge of murder even if Miller acted unlawfully.

■ We arrive at this conclusion after reviewing *State v. Byrd,* 72 S.C. 104, 51 S.E. 542 (1905), one of the cases specifically overruled by *Belcher. Belcher,* 385 S.C. at 610, 612 n. 10, 685 S.E.2d at 809, 810 n. 10. Byrd faced a murder charge for the killing of William J. Cox, a magistrate. *Byrd,* 72 S.C. at 105–06, 51 S.E. at 542. Believing covered items in Byrd's buggy to be illegal liquor, Cox and B.M. Austin attempted to arrest Byrd and his companion. *Id.* at 106, 51 S.E. at 542. Cox and Austin stopped the men but found them armed, and Austin drew his gun. *Id.* As Austin chased the other man, Cox pursued Byrd and was shot and killed. *Id.* While Cox never identified himself as an officer of the law, evidence existed that suggested Byrd lived in the next county and, being "not unfamiliar with the country and its inhabitants," may have known Cox was a magistrate. *Id.* at 106, 51 S.E. at 542–43. The *Byrd* court observed an arresting officer has a duty to identify himself as an officer of the law and state the reason for the arrest. *Id.* at 107, 51 S.E. at 543. However, "the [officer's] failure to take these precautions does not justify homicide or even physical resistance by the party arrested, without inquiry on his part as to the authority for his arrest." *Id.* The *Byrd* court affirmed the jury instruction that "[t]he use of a deadly weapon presumes malice, but the presumption may be rebutted. So, after all, it is left for the jury to say, from all the facts and circumstances, whether the killing was done with malice, or not." *Id.* at 110, 51 S.E. at 544. In overruling *Byrd,* the *Belcher* court observed the *Byrd* court "approved of the [malice] charge even with evidence of mitigation." *Belcher,* 385 S.C. at 606, 685 S.E.2d at 806.

We find Miller's case is similar to Byrd's, in that evidence of mitigation exists that renders the inferred malice instruction improper. Here, the State presented evidence that there

were no ill feelings between Miller and Blount and Miller exhibited surprise and panic when the gun discharged. Eyewitnesses Hopkins and Hunter testified they saw no animosity or argument between Miller and Blount.[7] Hopkins described Miller playing with the gun and showing it off like a toy shortly before deciding to leave. Although Hunter testified Miller instructed Blount to get his "bitch ass" or "punk ass" up so they could leave, Hopkins explained the phrasing was "just an expression" and did not indicate Miller was angry with Blount. Remembering Miller being as "surprised as anyone" when the gun went off, Hopkins attested he was certain Miller did not intend to shoot Blount. In addition, Hunter recalled Miller screaming "y'all know I didn't mean to shoot him, y'all know I didn't mean to shoot him" immediately after the gun discharged. Aside from Hunter's recollection of the way Miller informed Blount he was ready to leave, the State presented no evidence of discord or ill will between the men.

We find no way to distinguish *Byrd* and *Belcher*. *Belcher* forbids the inferred malice charge when there is evidence of mitigation and overruled *Byrd* as having "evidence of mitigation" despite Byrd's illegal conduct, which was similar to Miller's conduct in this case. Accordingly, the trial court erred in instructing the jury that it could infer malice from Miller's use of a deadly weapon.

■ Finally, the State unpersuasively contends any error was harmless.[8] The *Belcher* court confronted this issue as well:

---

7. Both witnesses had charges pending against them and testified for the State in order to have their own charges reduced. Nonetheless, both witnesses refused to concede Miller intended to shoot Blount.

8. The State argues the involuntary manslaughter charge was inappropriate because the evidence presented did not support it. Thus, the State reasons, any error in the inference of malice charge was harmless. The State further contends that, inasmuch as Miller was not entitled to an involuntary manslaughter charge, he could only have been convicted of murder. We note the jury might have found Miller not guilty of any crime. However, because we find the inference of malice charge was improper due to the presentation of evidence of mitigation, we need not further address the State's argument that Miller's murder charge was not subject to reduction.

Errors, including erroneous jury instructions, are subject to harmless error analysis. In many murder prosecutions, . . . there will be overwhelming evidence of malice apart from the use of a deadly weapon. Here, however, the error in charging that malice may be inferred by the use of a deadly weapon cannot be considered harmless. Evidence of self-defense was presented, thereby highlighting the prejudice resulting from the charge. It is entirely conceivable that the only evidence of malice was Belcher's use of a handgun. We need go no further than saying we cannot conclude the error was harmless beyond a reasonable doubt.

*Id.* at 611–12, 685 S.E.2d at 809–10 (citations omitted). In the case at bar, Miller did not assert self-defense, but the State also failed to present "overwhelming evidence of malice" apart from the use of a gun. Consequently, here, as in *Belcher*, the instruction that the jury could infer malice from the use of a gun may have been the jury's sole basis for finding malice and convicting Miller of murder. In this circumstance, the error in giving this jury instruction was not harmless.

## CONCLUSION

We find the appeal in this case was pending at the time our supreme court decided *Belcher*. Consequently, a *Belcher* analysis is appropriate.

We further find evidence Miller acted with malice in shooting Blount is either limited or nonexistent and mitigating evidence was presented at trial. Accordingly, we reverse the trial court's decision to instruct the jury it could infer malice from the use of a deadly weapon in this case, and we remand for a new trial.

**REVERSED AND REMANDED.**

FEW, C.J., concurs.

PIEPER, J., concurring.

I concur with the majority but also write separately because I believe the involuntary manslaughter charge was warranted by the evidence presented at trial. "If there is any evidence warranting a charge on involuntary manslaughter, then the charge must be given." *State v. Wharton,* 381 S.C. 209, 216,

672 S.E.2d 786, 789 (2009) (citation omitted). "Involuntary manslaughter is defined as: (1) the unintentional killing of another without malice, but while engaged in an unlawful activity not naturally tending to cause death or great bodily harm; or (2) the unintentional killing of another without malice, while engaged in a lawful activity with reckless disregard for the safety of others." *State v. Rivera*, 389 S.C. 399, 404, 699 S.E.2d 157, 159 (2010) (citation omitted). "It is unlawful for a person to present or point at another person a loaded or unloaded firearm." S.C.Code Ann. § 16–23–410 (2003). Presenting a weapon means "to offer to view in a threatening manner, or to show in a threatening manner." *In re Spencer R.*, 387 S.C. 517, 522–23, 692 S.E.2d 569, 572 (Ct.App.2010).

Evidence was presented at trial that Miller was acting lawfully with reckless disregard for the safety of others. Witness Joseph Hopkins testified that prior to shooting Blount, Miller had been sitting at the table and playing with the gun "like somebody that got a brand new toy." Hopkins also testified that when Miller was ready to leave, Miller told Blount he needed "to bring your little punk self on." Hopkins testified Miller did not sound mean and that "get your punk self on" is just an expression that means "come on, let's go." When asked whether Miller pointed the gun at Blount, Hopkins replied:

> Not really. It was just like a wave.... Like if I wave something this way, but you wasn't in the line of fire.... I'm not just putting that in your face and telling you to come on. No, it wasn't like that ... it was just like a little wave.

Additionally, Hopkins testified that immediately prior to the shooting "[Miller] was happy," "everything was all right," and "it was ... a social gathering, everybody sitting around kicking it." While witness Tammy Hunter testified that Miller pointed the gun at Blount and told him to get his "bitch ass up," Hunter also testified that there were no arguments, altercations, or harsh feelings amongst anyone in the room. Additionally, Hunter testified that there had been no arguments between Miller and Blount and that they seemed like they were friends.

Based on the foregoing, evidence was presented that Miller was acting lawfully because his 'waving' or 'showing' a gun at Blount was not in a threatening manner that constitutes presenting a firearm. This evidence, depending on the view of the jury, could reduce the homicide from murder to involuntary manslaughter. Since a jury question existed as to whether the gun was pointed or presented in an unlawful manner, as opposed to merely recklessly waving it in the air in a non-threatening manner, the trial court's implied malice instruction was error. *See State v. Belcher,* 385 S.C. 597, 611, 685 S.E.2d 802, 809 (2009) ("[I]nstructing a jury that 'malice may be inferred by the use of a deadly weapon' is confusing and prejudicial where evidence is presented that would reduce, mitigate, excuse or justify the homicide.").