**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Terrance Edward Stewart, Appellant.

Appellate Case No. 2016-002524

―――――――――――

Appeal From Laurens County
Frank R. Addy, Jr., Circuit Court Judge

―――――――――――

Unpublished Opinion No. 2019-UP-209
Submitted April 1, 2019 – Filed June 5, 2019

―――――――――――

**AFFIRMED**

―――――――――――

Clarence Rauch Wise, of Greenwood, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, and Senior Assistant Deputy Attorney General John Benjamin Aplin, all of Columbia; and Solicitor David Matthew Stumbo, of Greenwood, for Respondent.

―――――――――――

**PER CURIAM:** Terrance Edward Stewart was convicted of distribution of heroin, trafficking heroin, and possession of oxycodone, for which the trial court sentenced him to a total of twenty-five years imprisonment. On appeal, Stewart

argues the trial court erred in (1) failing to suppress evidence seized from his residence when the search warrant was insufficient and the issuing magistrate had no recollection of the oral testimony given to supplement the affidavit; (2) failing to suppress evidence seized from his residence when the magistrate failed to keep records in accordance with section 17-13-171 of the South Carolina Code (2014); (3) failing to charge the jury on the lesser-included offense of possession of heroin with intent to distribute; (4) failing to dismiss the charges pursuant to section 44-53-410 of the South Carolina Code (2017); (5) charging the jury his knowledge could be inferred when a controlled substance was found on property under his control; and (6) charging the jury on constructive possession when such a charge eliminated any *mens rea* of possession. We affirm.

## FACTS/PROCEDURAL HISTORY

In June 2015, a Laurens County grand jury indicted Stewart on charges of distribution of heroin, trafficking in heroin, and possession with intent to distribute oxycodone. The indictments all arose from an incident on January 22, 2015.

In April 2015, Stewart appeared in federal district court for a sentencing hearing; he had previously pled guilty to federal drug charges. During the proceeding, the federal court learned Stewart had been arrested for the instant state charges. The federal court heard testimony from Sergeant Matt Veal of the Laurens County Sheriff's Department (the Department), who described the circumstances of Stewart's arrest. The federal court found Stewart did not accept responsibility for his federal charges because he continued to involve himself with drug activity. The federal court therefore varied upward from the recommended sentence of six years and sentenced Stewart to a term of twelve years for his federal charges.

Prior to trial on his state charges, Stewart filed a motion to suppress evidence found during the search of his residence pursuant to a warrant, which he argued failed to establish probable cause. The trial court held an in-camera hearing regarding Stewart's arrest, the issuance of the search warrant, and the subsequent search.

Deputy Steven Sweat of the Department testified he received reports about a series of heroin overdoses in Laurens County. He explained one of the individuals who overdosed—Lawrence Cheatam—told police officers he bought the heroin from a man known as "Cheddar" and described the trailer Cheddar used to deal heroin. Deputy Sweat performed background research on the trailer and Cheddar; he learned Stewart owned the trailer and went by the nickname Cheddar. Cheatam

agreed to act as a confidential informant (CI) and participate in a "controlled buy." Officers gave Cheatam five $20 bills whose serial numbers they recorded, equipped his person with a camera, and drove him in an unmarked car to Stewart's trailer. Once there, Cheatam briefly met with Stewart and returned to the car with five bags of heroin. Deputy Sweat then generated an incident report and search warrant and contacted a Laurens County magistrate.

Deputy Sweat explained he met with the magistrate in her home, where he presented the search warrant and supplemented it with sworn oral testimony. He testified he told the magistrate "about the background information, the controlled buy that occurred there, what [they] obtained during the controlled buy, the circumstances involved, [and] the audio and video surveillance of [Cheatam]." On cross-examination, he stated the magistrate did not take notes or record his oral testimony. He clarified his meeting with the magistrate spanned approximately twenty minutes, and he did not tell her anything that was not available in the incident report or video evidence.

At the conclusion of the in-camera hearing, the trial court denied Stewart's motion to suppress. The court found Deputy Sweat's oral testimony was sufficient for probable cause and noted Deputy Sweat did not present the magistrate any undiscoverable information.

Stewart later filed a pretrial motion to dismiss the state charges, arguing the state prosecution was barred on double jeopardy grounds. Stewart asserted the federal court effectively convicted him of the state crimes and punished him by increasing his federal sentence from six years to twelve. The trial court denied Stewart's motion to dismiss, finding the federal court did not convict him of his state charges.

In December 2016, the case proceeded to a two-day jury trial. Regarding the controlled buy operation, Sergeant Veal presented substantially the same testimony as he did to the federal court; Deputy Sweat gave substantially the same testimony as he did in-camera. Sergeant Veal also testified about the search of Stewart's trailer. He explained Stewart cooperated with the officers, who searched his person for contraband; in his pants pockets, they found the $100 Cheatham used to purchase the five bags of heroin. Sergeant Veal explained officers found a large bag of "greyish powder" and "a tinfoil ball of pills" in a box on top of the refrigerator. Officers also uncovered a set of digital scales with grey powder residue on top of the refrigerator with the drugs; in other areas of the trailer, they found a pistol and several thousand dollars in cash.

Shana Sorrells testified as an expert in forensic toxicology and drug analysis. Sorrells explained the five bags of heroin Stewart sold to Cheatham weighed approximately 0.38 grams altogether. She stated the bag of grey powder officers found on top of the refrigerator contained a mixture of heroin and fentanyl and weighed 23.83 grams. She also stated she received and tested fifty-six oxycodone pills.

During a jury charge conference, Stewart raised concerns regarding the definition of constructive possession, the trial court's proposed charge on inferences, and a charge on possession with intent to distribute as a lesser-included offense of trafficking. The trial court overruled his objections and instructed the jury as follows: "To prove possession, ladies and gentlemen, the State must prove beyond a reasonable doubt [Stewart] had knowledge of, power over, and the intent to control the disposition or use of the drugs involved. Possession may be either actual or constructive." The trial court defined constructive possession as "dominion and control over either the drugs [themselves] or the property upon which the drugs were found." Regarding facts and inferences, the trial court stated, "[Stewart's] knowledge and possession may be inferred when a substance is found on the property under [his] control. However, this inference is simply an evidentiary fact to be taken into consideration by you along with the other evidence and to be given the weight you think it deserves."

The jury found Stewart guilty of all charges, and the trial court sentenced him to concurrent terms of twenty-five years imprisonment on the trafficking in heroin charge, ten years on the distribution of heroin charge, and five years on the possession of oxycodone charge. This appeal followed.

**STANDARD OF REVIEW**

In criminal cases, this court sits to review errors of law only, and is bound by the trial court's factual findings unless those findings are clearly erroneous. *State v. Edwards*, 384 S.C. 504, 508, 682 S.E.2d 820, 822 (2009). On review, this court is limited to determining whether the trial court abused its discretion. *Id.* An abuse of discretion occurs when the court's decision is unsupported by the evidence or controlled by an error of law. *State v. Black*, 400 S.C. 10, 16, 732 S.E.2d 880, 884 (2012). The appellate court "does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial court's ruling is supported by any evidence." *Edwards*, 384 S.C. at 508, 682 S.E.2d at 822.

# LAW/ANALYSIS

## I. Search Warrants

First, Stewart argues there was no basis for the trial court to find Judge Tucker made an independent determination that probable cause existed before signing the search warrant. Stewart contends that because magistrate had no independent recollection and did not take notes or record Deputy Sweat's oral testimony, no probable cause could be established, and the trial court should have suppressed the fruits of the search. We disagree.

An appellate court reviewing the decision to issue a search warrant should decide whether the magistrate had a substantial basis for concluding probable cause existed. *State v. King*, 349 S.C. 142, 149, 561 S.E.2d 640, 643 (Ct. App. 2002). "The magistrate should make a probable cause determination based on all of the information available to the magistrate when the warrant was issued. In determining the validity of the warrant, a reviewing court may consider only information brought to the magistrate's attention." *State v. Gore*, 408 S.C. 237, 247–48, 758 S.E.2d 717, 722 (Ct. App. 2014). "The affidavit must contain sufficient underlying facts and information upon which the magistrate may make a determination of probable cause." *State v. Philpot*, 317 S.C. 458, 461, 454 S.E.2d 905, 907 (Ct. App. 1995). "A search warrant affidavit which itself is insufficient to establish probable cause may be supplemented before the magistrate by sworn oral testimony." *State v. McKnight*, 291 S.C. 110, 113, 352 S.E.2d 471, 472 (1987).

Stewart's reliance on the magistrate's lack of recollection is unpersuasive. A reviewing court's inquiry into probable cause focuses on what information was provided to the issuing magistrate, not on what information the issuing magistrate remembers. *See Gore*, 408 S.C. at 247–48, 758 S.E.2d at 722. Deputy Sweat testified during trial about his meeting with the magistrate. Specifically, Deputy Sweat explained he presented the magistrate all of the information available in the search warrant, his corresponding affidavit, and his personal involvement in the controlled buy. Deputy Sweat confirmed he did not tell the magistrate any information that was not available in his affidavit or the video recording. Because Deputy Sweat's testimony showed what information was given to the magistrate and Stewart did not dispute the sufficiency of that information in establishing probable cause, we find no error in the trial court's admission of the evidence seized during the search.

Second, Stewart argues the magistrate failed to keep records required by section 17-13-141 of the South Carolina Code (2014). He asserts this failure prejudiced him because it prevented him from knowing whether she received sufficient evidence from Deputy Sweat to establish probable cause. We disagree and find Stewart failed to show prejudice from the magistrate's ministerial lapse. *See* S.C. Code Ann. § 17-13-141(A) (2014) (providing every judiciary official authorized to issue search warrants must keep records reflecting, among others, the reason for issuing the warrant); *State v. Wise*, 272 S.C. 384, 386, 252 S.E.2d 294, 295 (1979) (holding the failure to fulfill a statutory ministerial requirement does not void a warrant unless a defendant can show prejudice); *State v. Sheldon*, 344 S.C. 340, 343, 543 S.E.2d 585, 586 (Ct. App. 2001) ("In the context of the application of the exclusionary rule, our supreme court held the 'exclusion of evidence should be limited to violations of constitutional rights and not to statutory violations, at least where the appellant cannot demonstrate prejudice at trial resulting from the failure to follow statutory procedures.'" (quoting *State v. Chandler*, 267 S.C. 138, 143, 226 S.E.2d 553, 555 (1976))). As discussed above, Deputy Sweat unequivocally testified he did not provide the magistrate any information that was not contained in the warrant, his corresponding affidavit, and the video recording of the controlled buy. Thus, Stewart cannot show prejudice from the absence of the magistrate's records because the State provided him the information during discovery.

## II.    Lesser-Included Offense

Stewart argues the trial court erred in failing to charge the jury on the lesser-included offense of possession of heroin with intent to distribute. He asserts section 44-53-370 of the South Carolina Code (2017) mandated the charge even where the weight of the heroin was not at issue. We disagree.

"The law to be charged must be determined from the evidence presented at trial." *State v. Rivera*, 389 S.C. 399, 404, 699 S.E.2d 157, 159 (2010). "Where there is evidence from which the jury could infer that the defendant committed a lesser offense, the trial [court] must submit the lesser-included offense to the jury." *Id.* "A trial [court] is required to charge the jury on a lesser-included offense if there is evidence from which it could be inferred the lesser, rather than the greater, offense was committed." *State v. Green*, 397 S.C. 268, 288–89, 724 S.E.2d 664, 674 (2012).

Section 44-53-370(a)(1) designates a number of possession-based crimes for controlled substances, including manufacturing and possession with intent to

distribute. Subsection 44-53-370(e)(3) later provides in relevant part that any person who possesses at least four grams of heroin is guilty of the felony described as "trafficking in illegal drugs." Subsection 44-53-370(e)(3)(b) further provides that a person who is convicted of possessing between fourteen and twenty-eight grams of heroin must serve a minimum sentence of twenty-five years. The floating text at the bottom of the statute clarifies that possession with intent to distribute is a "lesser[-]included offense to the offense of trafficking *based upon possession . . . .*" *See* § 44-53-370 (emphasis added). Thus, the plain reading of the statute reflects the legislature's intent to enact a hierarchical ladder of discrete offenses and punishments based upon the weight of the drugs possessed.

Moreover, our supreme court has consistently held possession with intent to distribute is only a lesser-included offense of trafficking when the weight of the drugs is in dispute. *See Sellers v. State*, 362 S.C. 182, 190, 607 S.E.2d 82, 86 (2005) ("A defendant is not entitled to a lesser-included charge of possession with intent to distribute when there is evidence that the amount involved exceeded minimum for trafficking."), *abrogated on other grounds by Smalls v. State*, 422 S.C. 174, 810 S.E.2d 836 (2018); *see also State v. Adams*, 291 S.C. 132, 135, 352 S.E.2d 483, 485–86 (1987) ("Because the amounts of marijuana and cocaine in evidence were less than the statutory amounts that establish a presumption of possession with intent to distribute, appellant was entitled to a charge on simple possession of these substances"). Here, there was no dispute the weight of the heroin found in Stewart's trailer exceeded the minimum amount to trigger the trafficking offense. Sorrells testified the bag of grey powder found on top of the fridge, which contained a mixture of heroin and fentanyl, weighed 23.83 grams. Stewart did not contest this amount; rather, his theory of defense was that the drugs were not his. Because the 23.83 grams of heroin triggered the statutory trafficking offense and Stewart did not dispute the weight, we find the trial court did not err in refusing to instruct the jury on possession with intent to distribute because no evidence supported such a charge. *See Rivera*, 389 S.C. at 404, 699 S.E.2d at 159 ("Where there is evidence from which the jury could infer that the defendant committed a lesser offense, the trial [court] must submit the lesser-included offense to the jury.").

## III.    Double Jeopardy

Stewart argues the trial court erred in failing to dismiss his charges pursuant to section 44-53-410 of the South Carolina Code (2017). He contends the federal sentencing court's upward variance based on his instant charges constituted a

conviction under the statute, barring future prosecution on a state charge. We disagree.

"If a violation of this article is a violation of a [f]ederal law or the law of another state, the conviction or acquittal under [f]ederal law or the law of another state for the same act is a bar to prosecution in this [s]tate." S.C. Code Ann. § 44-53-410 (2017). The statute "bars state prosecution for the same offense once jeopardy has attached in the federal action." *United States v. Manbeck*, 744 F.2d 360, 371 (4th Cir. 1984).

When considering Stewart's sentence length, the federal court heard testimony from Sergeant Veal about Stewart's arrest in connection with his state charges. The federal court's inquiry was not into whether Stewart was guilty of the state charges but rather into whether he failed to accept responsibility for his federal charges by continuing to involve himself in drug activity. The federal court made clear that the state charges were still pending and found that Stewart lost his acceptance of responsibility for the federal charges, thereby varying upward and increasing Stewart's federal sentence from six years to twelve. *See* 18 U.S.C. § 3553(a) (2018) (providing factors federal courts must consider when imposing sentences); FCJ Federal Sentencing Guidelines Manual § 3E1.1 (11/1/18) (providing it is appropriate for federal courts to consider a defendant's acceptance of responsibility during sentencing).

In *Witte v. United States*, the Supreme Court of the United States addressed the issue of whether a federal court's consideration of subsequent, uncharged crime imposed a punishment for double jeopardy purposes. 515 U.S. 389, 395–406 (1995). Witte pled guilty to attempted possession of marijuana with intent to distribute. *Id.* at 392–93, 396. Subsequently, Witte was indicted for conspiring and attempting to import cocaine; the alleged cocaine-related activities occurred in the same timeframe as the marijuana-related offenses. *Id.* at 394–95. Witte moved to dismiss the cocaine indictment on double jeopardy grounds, arguing the sentencing court considered his cocaine-related activities when sentencing him on his marijuana-related activities. *Id.* at 395. The Supreme Court stated Witte "clearly was neither prosecuted for nor convicted of the cocaine offenses during the [marijuana] criminal proceeding." *Id.* at 396. The Court continued, "[W]e specifically have rejected the claim that double jeopardy principles bar a later prosecution or punishment for criminal activity where that activity has been considered at sentencing for a separate crime." *Id.* at 398.

*Witte* is directly on point. Given the federal court's clear findings that Stewart's state charges were used only to reduce his acceptance of responsibility for unrelated federal charges, Stewart's argument on this issue lacks merit.

## IV.  Jury Instructions

Stewart argues the trial court erred in charging the jury on constructive possession. He asserts the jury charge allowed the jury to infer his knowledge and possession simply because the drugs were found on his property, thereby lowering the burden of proof. Stewart further argues the charge amounted to a charge on the facts. We disagree.

"In reviewing jury charges for error, we must consider the court's jury charge as a whole in light of the evidence and issues presented at trial." *State v. Adkins*, 353 S.C. 312, 318, 577 S.E.2d 460, 463 (Ct. App. 2003). "A jury charge is correct if, when the charge is read as a whole, it contains the correct definition and adequately covers the law." *Id.* at 318, 577 S.E.2d at 464; *State v. Jackson*, 297 S.C. 523, 377 S.E.2d 570 (1989) (recognizing that jury instructions must be considered as a whole and if as a whole, they are free from error, any isolated portions that might be misleading do not constitute reversible error). "To warrant reversal, a trial [court]'s refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant." *State v. Mattison*, 388 S.C. 469, 479, 697 S.E.2d 578, 583 (2010).

Here, the trial court defined constructive possession as "dominion and control over either the drugs or the property upon which the drugs were found." The trial court further stated that Stewart's knowledge and possession could be inferred when a controlled substance was found on property under his control. We find no error in the trial court's instruction, as its definition of constructive possession is a correct statement of the law as it currently exists. *See State v. Hudson*, 277 S.C. 200, 203, 284 S.E.2d 773, 775 (1981) ("Where contraband materials are found on premises under the control of the accused, this fact in and of itself gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury."); *State v. Adams*, 291 S.C. 132, 135, 352 S.E.2d 483, 486 (1987) ("The proper charge on constructive possession is to instruct the jury that the defendant's knowledge and possession may be inferred if the substance was found on premises under his control.").

We are also unpersuaded by Stewart's contention that the jury instruction amounted to a charge on the facts. Here, the trial court began its instructions by informing

the jury it had no opinion on the facts. After its instructions on constructive possession and inferences, the trial court stated the inference of knowledge rising from control over property where the drugs were found "is simply an evidentiary fact to be taken into consideration" and weighed accordingly. *See Adams*, 291 S.C. at 135–36, 352 S.E.2d at 486 ("The trial [court] should explain to the jury that it is free to accept or reject this permissive inference of knowledge and possession depending upon its view of the evidence."). Based on the foregoing, we find the trial court's jury instructions were proper.

**CONCLUSION**

Accordingly, Stewart's convictions are

**AFFIRMED.**[1]

**HUFF, THOMAS, and KONDUROS, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.