697 S.E.2d 578

**The STATE, Respondent,**

v.

**Amos Lamont MATTISON, Petitioner.**

No. 26853.

Supreme Court of South Carolina.

Heard June 8, 2010.
Decided Aug. 9, 2010.

Chief Appellate Defender Robert M. Dudek, of South Carolina Commission on Indigent Defense, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh and Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, Robert Mills Ariail, of Greenville, for Respondent.

Justice BEATTY.

The Court granted Amos Lamont Mattison's petition for a writ of certiorari to review the decision of the Court of Appeals in *State v. Mattison*, 380 S.C. 326, 669 S.E.2d 635 (Ct.App.2008), affirming Mattison's convictions for murder, assault and battery with intent to kill (ABWIK), and possession of a weapon during the commission of a violent crime. In so ruling, the Court of Appeals found the trial judge did not err in refusing Mattison's request to charge that "prior knowledge of the commission of a crime is insufficient to establish guilt" and that "mere association with a person who commits a crime is insufficient to establish guilt." We affirm as modified.

## I. Factual/Procedural History

On the morning of August 21, 2003, Jose Garcia was injured in a shooting that left his brother, Roberto Garcia, and their cousin, Jorge Lemus–Patricio, dead. In its opening statement, the State advanced the theory that Mattison and Britney Ervin schemed to lure all three men to a remote location to murder them and steal Jose's 1964 black Chevy Impala.[1]

Jose, the State's primary witness, testified that his cousin Jorge woke him up on the morning of August 21, 2003, and told him that someone wanted to buy Jose's Chevy Impala.

---

1. As a result of this incident, a Greenville County grand jury indicted Mattison for: (1) ABWIK with respect to Jose Garcia; (2) murder and possession of a weapon during the commission of a violent crime as to Jorge Lemus–Patricio; (3) murder and possession of a weapon during the commission of a violent crime with regard to Roberto Garcia; and (4) grand larceny as to Roberto and Jorge's vehicle. Mattison was charged based on his "aiding, abetting, and/or assisting" of Ervin. Ervin pleaded guilty to the charges prior to Mattison's trial.

Shortly thereafter, a "black skinny man," whom Jose later identified as Ervin, came to his home to discuss the purchase price of the car. After this discussion, Ervin left and returned approximately five to ten minutes later requesting to test drive the car. Jose and Ervin then left the house in the car. As they approached a street corner, Jose saw Mattison wave at them, but they did not pick him up. Jose and Ervin continued driving and then returned to Jose's home at which time Ervin left. Approximately five minutes later, Ervin returned to Jose's house and told him that he wanted to purchase the car but had to go to his grandfather's house to get the money.

Jose then drove Ervin to the home of Ervin's grandfather. Roberto and Jorge followed in their Honda Passport vehicle in order to bring Jose home after he sold the car. As Jose and Ervin were driving, they saw Mattison at the same street corner as before. This time, they stopped the car and picked up Mattison as a passenger. Although Jose could not completely understand their conversation due to a language barrier, he testified that Ervin and Mattison talked during the ride and appeared to know each other.

Upon arrival at the destination, Mattison and Ervin exited the car and walked around the house. After about ten minutes, Mattison returned to the car and began talking with Jose. Mattison told Jose that he did not want to go back around the house because Ervin's grandfather did not like him.

After waiting for approximately fifteen minutes, Jose was about to leave, but Ervin returned to the front of the house and told Jose that he was getting the money from his grandfather. Ervin also said that he needed help with a tire. Roberto complied with this request and went around the house with Ervin to assist him. Jorge exited the Honda Passport and asked Jose what was happening when they heard a gunshot. Mattison told Jose that Ervin's grandfather "was crazy and he was shooting."

Jose, Jorge, and Mattison then went around the house where Jose observed Ervin with a gun in his hand, coming toward the three men. When Jorge saw Ervin with the gun, he tried to run. As Ervin chased Jorge, Mattison told Jose

not to worry because he also had a gun and that he would help them. Mattison then pulled out a handgun, which Jose described as "not like" the one that Ervin brandished. Ervin caught Jorge and the four men then continued walking toward the back of the house with Jose and Jorge in front followed by Ervin and then Mattison.

As they reached the corner of the house, Jose heard Roberto moaning and then saw him face down on the ground. Jose then pled with Mattison and Ervin to just take the cars and let him get his brother to a hospital. As Ervin raised the gun to shoot Jose, Jorge jumped on top of Ervin and Jose joined in the struggle. Jose looked up and saw Mattison standing in the same corner as before with the gun in his hands.

During the struggle over the gun with Ervin, the gun fired but did not hit Jose. As Ervin was trying to shoot Jose, he told Mattison more than once to shoot Jose. Jose then heard a gunshot from Mattison's direction, felt his shirt fly up, and then turned to see Mattison running away. Jose noticed Jorge "getting weaker in fighting" and saw him fall to the ground. Jose eventually obtained control of the gun. Ervin then fled the scene.

As Jose went to seek help, he discovered both the Chevy Impala and Honda Passport were gone. Ultimately, Jose found a neighbor who called 911 to report the incident.

Jose suffered a bullet graze injury to his shoulder during the struggle. Roberto and Jorge were transported to the hospital where both were eventually pronounced dead. According to the autopsies, Roberto died from a gunshot wound to the abdomen and another to the pelvis. Jorge died from a gunshot wound to the head. Ballistic evidence revealed that the two bullets recovered from Roberto were fired from the nine millimeter Luger gun that Jose had taken from Ervin during the struggle. The bullet recovered from Jorge was a thirty-two caliber, fired from a gun that authorities never recovered.

Later in the day, Jose gave a statement to investigating officers wherein he described his assailants as "the skinny guy and the fat guy." He identified Ervin as "the skinny guy" from a photographic lineup after Ervin was arrested while driving Jose's Chevy Impala. Jose made an in-court identifi-

cation of Mattison as the other man who rode in the back of his car that day and ultimately shot in his direction.

Following his arrest, Ervin gave two statements to the investigating officers. In his first statement, Ervin claimed Mattison asked him to set up "some Mexicans" so that Mattison could rob them of their drugs. In describing the incident at his grandfather's shop, Ervin claimed that Mattison used a nine millimeter gun to shoot "the Mexicans."

Ervin asserted he gave a second statement in order to correct his first statement "regarding how the shooting went down." In contrast to his first statement, Ervin admitted to shooting one of the victims in the chest and the neck. However, he claimed his gun discharged when the other men struggled with him over the weapon. Ervin further stated that when his gun discharged, Mattison fired his weapon.

At trial, Ervin denied telling the investigating officers much of what was in his two prior statements. He also gave a different version of the events in that he claimed Mattison brought "some Mexicans" to his home that day to see if Ervin wanted to buy a Chevy Impala. Ervin testified that when they arrived at his grandfather's property, Mattison shot one of the Mexicans. After hearing these gunshots, Ervin claimed to have driven away in the Chevy Impala.

Although Mattison did not testify at trial, a statement made by Mattison was read into the record. In his statement, Mattison claimed Ervin brought a Mexican to his house who tried to buy Mattison's car in exchange for drugs. According to Mattison, he rode with Ervin and the Mexican in a black car while a "short black guy named Chuck or Bud" followed in a gray car with two other Mexicans. Mattison stated that Ervin and the Mexican then exited the car and went around the house while the Mexicans from the gray car remained with Mattison. Mattison claimed that "Chuck" remained in the gray car. Mattison then heard a "pop, pop," and said "let's go," but one of the Mexicans refused because of his brother. They then ran to the back of the house. When Mattison heard "pop, pop" again, he took off running in the other direction. As he ran up the driveway, Mattison claimed to have seen Ervin drive off in the "black car."

Prior to closing arguments, Mattison's counsel submitted eight requests to charge involving "mere knowledge," "mere association," and "mere presence." In response, the trial judge stated he would cover the requests, but "not exactly" as counsel requested. Counsel then asked whether the trial judge would instruct the jury that "prior knowledge is not sufficient, mere association." Mattison's counsel took exception to the trial judge's refusal to charge this request.

During his jury instructions, the trial judge charged in part:

Ladies and Gentlemen, a principal in a crime is one who either in person perpetrates the crime or who being present aides and abets and assists the commission of that crime. I charge you, Ladies and Gentlemen, that mere presence at the scene of a crime is not sufficient to convict.

However, when one does an act in the presence of or with the assistance of another, the act is done by both. Where two or more acted with a common design or intent is present at the commission of a crime, it does not matter by one who the crime is committed, for all are guilty.

Intent, however, Ladies and Gentlemen, is a necessary element of the offense. There must have been a common design or attempt to commit the crime. The crime must have been committed pursuant to the person aiding and abetting by some overt act. Now, presence at the commission of a crime means to be sufficiently near so as to be able to aid and abet in its commission.

Stated somewhat differently, Ladies and Gentlemen, is several, two or more persons [pursuant] to a common [design] to commit an unlawful act, set out together and each takes a part agreed upon or assigned to him to commit the act or which to watch at a proper distance at stations to prevent an appearance or surprise or to encourage the commission of [an] unlawful act or to assist, if necessary, escape of those immediately engaged in the commission of the unlawful act, under any or all of these circumstances, if the unlawful act is committed, the act is one, the act of one is the act of all and all would be guilty.

In other words, if several persons agree or conspire to commit a crime, each of those persons are criminally responsible for the acts of his confederates of which are done

in the presence of the common purpose for which they combined. The common purpose may have not included or involved killing anyone.

But, if in executing the common design and purpose, a common homicide is committed by one of the confederates and you, the jury, determine from all the evidence beyond a reasonable doubt that the homicide was a probable and natural consequence of the acts which was done in pursuit to the common design, then Ladies and Gentlemen, all who are present either actually or constructively and participated in the unlawful common design would be guilty.

At the conclusion of the charge, Mattison's counsel took exception to the trial judge not charging his requests, "particularly mere association and prior knowledge."

The jury found Mattison guilty of: (1) the murder of Jorge; (2) possession of a weapon during the commission of a violent crime as to Jorge's murder; and (3) ABWIK with respect to Jose.[2] Because the jury was unable to reach a verdict regarding Roberto's murder, the trial judge declared a mistrial as to this charge.

Mattison appealed his convictions to the Court of Appeals based on the trial judge's failure to charge the jury that "prior knowledge that a crime is going to be committed is not sufficient to convict" and that "mere association with a person who commits a crime was insufficient to establish guilt as an accomplice or an aider or abetter."

The Court of Appeals affirmed Mattison's convictions. *State v. Mattison*, 380 S.C. 326, 669 S.E.2d 635 (Ct.App.2008).

Relying in part on this Court's decision in *State v. Kelsey*, 331 S.C. 50, 502 S.E.2d 63 (1998), the court found the trial judge's charge on the whole was proper. *Id.* at 336, 669 S.E.2d at 640. Specifically, the court noted the charge to the jury included a "detailed instruction on aiding, abetting, and assisting in the commission of a crime through some overt act." *Id.* at 335, 669 S.E.2d at 640. Based on this language,

---

**2.** Before the case was submitted to the jury, the trial judge granted Mattison's directed verdict motions as to the charge of possession of a weapon during the commission of a violent crime with respect to the murder of Roberto, as well as the charge of grand larceny of the Honda Passport.

the court concluded the charge "clearly indicated that mere presence alone was insufficient to sustain a conviction." *Id.* at 335–36, 669 S.E.2d at 640. Additionally, the court stated:

> Implicit in the charge given to the jury was that mere knowledge a crime was going to occur, or mere association with one who commits a crime is insufficient to constitute guilt, but that Mattison must have, while present at the commission of the crime, aided, abetted, or assisted in the commission of the crime pursuant to a common design or purpose before a conviction could be had.

*Id.* at 336, 669 S.E.2d at 640.

This Court granted Mattison's petition for a writ of certiorari to review the decision of the Court of Appeals.

## II. Discussion

### A.

Mattison contends the Court of Appeals erred in affirming the trial judge's refusal to instruct the jury that "prior knowledge of the commission of a crime was insufficient to establish guilt" and that "mere association with a person who commits a crime was insufficient to establish guilt." Because the evidence in this case "made the jury's understanding of those legal principles critical," Mattison claims the judge had "a duty to craft his instructions to the facts of the case."

### B.

"In reviewing jury charges for error, we must consider the court's jury charge as a whole in light of the evidence and issues presented at trial." *State v. Adkins,* 353 S.C. 312, 318, 577 S.E.2d 460, 463 (Ct.App.2003). "A jury charge is correct if, when the charge is read as a whole, it contains the correct definition and adequately covers the law." *Id.* at 318, 577 S.E.2d at 464; *State v. Jackson,* 297 S.C. 523, 377 S.E.2d 570 (1989) (recognizing that jury instructions must be considered as a whole and if as a whole, they are free from error, any isolated portions that might be misleading do not constitute reversible error). A jury charge that is substantially correct and covers the law does not require reversal. *State v. Foust,* 325 S.C. 12, 479 S.E.2d 50 (1996).

 The trial court is required to charge only the current and correct law of South Carolina. *Sheppard v. State,* 357 S.C. 646, 665, 594 S.E.2d 462, 472 (2004). "The law to be charged must be determined from the evidence presented at trial." *State v. Knoten,* 347 S.C. 296, 302, 555 S.E.2d 391, 394 (2001). "The substance of the law is what must be charged to the jury, not any particular verbiage." *Adkins,* 353 S.C. at 318–19, 577 S.E.2d at 464.

 "A request to charge a correct statement of the law on an issue raised by the indictment and the evidence presented at trial should not be refused." *State v. Austin,* 299 S.C. 456, 458, 385 S.E.2d 830, 831 (1989). "However, if the trial judge refuses to give a specific charge, there is no error if the charge actually given sufficiently covers the substance of the request." *Id.*

 To warrant reversal, a trial judge's refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant. *State v. Burkhart,* 350 S.C. 252, 261, 565 S.E.2d 298, 303 (2002). "Failure to give requested jury instructions is not prejudicial error where the instructions given afford the proper test for determining the issues." *Id.* at 263, 565 S.E.2d at 304. An appellate court will not reverse the trial judge's decision regarding a jury charge absent an abuse of discretion. *State v. Pittman,* 373 S.C. 527, 647 S.E.2d 144 (2007).

 "It is well settled that a defendant may be convicted on a theory of accomplice liability pursuant to an indictment charging him only with the principal offense." *State v. Dickman,* 341 S.C. 293, 295, 534 S.E.2d 268, 269 (2000). "Under the 'hand of one is the hand of all' theory, one who joins with another to accomplish an illegal purpose is liable criminally for everything done by his confederate incidental to the execution of the common design and purpose." *State v. Condrey,* 349 S.C. 184, 194, 562 S.E.2d 320, 324 (Ct.App.2002).

 "Under accomplice liability theory, 'a person must personally commit the crime or be present at the scene of the crime and intentionally, or through a common design, aid, abet, or assist in the commission of that crime through some overt act.'" *State v. Langley,* 334 S.C. 643, 648–49, 515

480

S.E.2d 98, 101 (1999) (quoting *Austin,* 299 S.C. at 459, 385 S.E.2d at 832).

"In order to be guilty as an aider or abettor, the participant must be chargeable with knowledge of the principal's criminal conduct." *State v. Leonard,* 292 S.C. 133, 137, 355 S.E.2d 270, 272 (1987); *see Wilson v. Wilson,* 319 S.C. 370, 373, 461 S.E.2d 816, 817 (1995) ("Prior knowledge that a crime is going to be committed, without more, is not sufficient to make a person guilty of the crime.").

"Mere presence at the scene is not sufficient to establish guilt as an aider or abettor." *Leonard,* 292 S.C. at 137, 355 S.E.2d at 272; *State v. Barroso,* 328 S.C. 268, 272, 493 S.E.2d 854, 856 (1997) (stating that mere association with admitted members of a conspiracy is insufficient to tie other persons to the conspiracy). However, "presence at the scene of a crime by pre-arrangement to aid, encourage, or abet in the perpetration of the crime constitutes guilt as a principle." *State v. Hill,* 268 S.C. 390, 395–96, 234 S.E.2d 219, 221 (1977).

"Any person who is present at a homicide, aiding and abetting, is guilty of the homicide as a principal, even though another does the killing." *State v. Zeigler,* 364 S.C. 94, 103, 610 S.E.2d 859, 864 (Ct.App.2005).

### C.

Initially, we note the judge's charge is confusing and at times contradictory with respect to the explanation of "mere presence." However, the charge when read as a whole was proper in that it adequately covered the law and was consistent with at least two of this Court's decisions. *State v. Kelsey,* 331 S.C. 50, 502 S.E.2d 63 (1998); *State v. Austin,* 299 S.C. 456, 385 S.E.2d 830 (1989).

In *Kelsey,* a case involving the murder of a teenage female by three teenage males, Kelsey argued the trial judge erred in failing to give proper conspiracy and mere presence instructions. Kelsey further asserted the judge improperly failed to instruct the jury that one's mere association with a person who commits a crime does not make a defendant an accomplice or a co-conspirator to the guilty perpetrator. Kelsey

challenged the following portion of the trial judge's instruction:

> Now of course, mere presence at the scene is insufficient to prove someone guilty of a crime. The burden is upon the state to prove every element of the crime charged. If you find after reviewing all of the evidence that the state has proven that the defendant was only present at the scene of the crime and they have not proven beyond a reasonable doubt any other participation in the crime, then you must find a defendant not guilty.
>
> The law says that proof of mere presence at the scene of the crime is not sufficient to find someone guilty. But, of course the law also says that the hand of one is the hand of all.
>
> The law says-that if a person-if a crime is committed by two or more persons who are acting together in the commission of a crime, then the act of one is the act of both.

*Kelsey,* 331 S.C. at 76–77, 502 S.E.2d at 76.

Although the charge did not include Kelsey's requested charge of "mere association," this Court found the trial judge's instructions on mere presence and accomplice liability were not misleading and were proper as a whole. *Id.* at 77, 502 S.E.2d at 76–77. In support of this finding, we noted the charge clearly explained that the State had the burden of proving every element of the crime and that mere presence was not enough to sustain a conviction. Additionally, we found the trial judge extensively instructed the jury on the requisite criminal intent of each of the charged crimes. *Id.*

Here, similar to the instruction in *Kelsey,* the judge specifically instructed that "mere presence" was insufficient to sustain a conviction. The judge also charged the jury regarding the State's burden of proving each and every element of the offenses for which Mattison was indicted.

In *Austin,* this Court found sufficient a nearly identical "mere presence" charge as the one in the instant case. In *Austin,* the trial judge charged the jury in relevant part:

> [A] principal in a crime is one who either in person perpetrates the crime or who being present aids, abeits [sic] and assists in the commission of that crime. When one does an act in the presence of and with the assistance of another,

the act is done by both. And where two or more, acting with a common design or a common intent, are present at the commission of a crime, it matters not by whose immediate agency that crime is committed because all would be guilty. Intent, however, ladies and gentlemen, is a necessary element, for there must have been a common design or intent to commit the crime and the crime must have been committed pursuant thereto with the person aiding and abeiting [sic] by some overt act.

*Austin*, 299 S.C. at 458–59, 385 S.E.2d at 831–32. Given "the language of the instruction made it sufficiently clear that to find guilt for a crime, a person must personally commit the crime or be present at the scene of the crime and intentionally, or through a common design, aid, abet, or assist in the commission of that crime through some overt act," this Court found the trial judge did not err by refusing to give Austin's requested "mere presence" charge. *Id.* at 459, 385 S.E.2d at 832.

As evidenced by these decisions, we find the trial judge correctly and sufficiently charged the law on "mere presence" and "mere association." Furthermore, the judge's instructions regarding "mere presence" encompassed Mattison's request to charge "mere association." A review of Mattison's requests to charge reveals that he included "mere presence" in the same charge as "mere association" and specifically recognized that these principles were similar or essentially synonymous. Accordingly, the trial judge did not err in refusing to charge Mattison's requests with respect to "mere presence" and "mere association."

We are, however, concerned with the trial judge's failure to charge "mere knowledge" or "prior knowledge" and the Court of Appeals' conclusion that this charge was "implicit" in the judge's instruction.

As a threshold matter, we believe this case is factually distinguishable from *Kelsey* and *Austin* on the ground Mattison submitted this charge and challenged its omission on appeal. In contrast, this was not an issue in either *Kelsey* or *Austin*. Thus, unlike the Court of Appeals, we find *Kelsey* is not dispositive of Mattison's entire appeal.

In view of this factual distinction, it is necessary to analyze the trial judge's refusal to charge Mattison's requested instruction regarding "mere knowledge."

Significantly, the element of "knowledge" is not mentioned in the trial judge's instruction even though Mattison's request to charge represented a correct statement of the law. *See, e.g., State v. Leonard,* 292 S.C. 133, 137, 355 S.E.2d 270, 272 (1987) (analyzing accomplice liability charge as to the offense of reckless homicide arising out of an automobile collision and recognizing a "charge must clearly explain" that "[i]n order to be guilty as an aider or abettor, the participant must be chargeable with knowledge of the principal's criminal conduct"); *State v. Collins,* 266 S.C. 566, 570–71, 225 S.E.2d 189–92 (1976) (concluding trial judge erred in refusing to charge that "[p]rior knowledge that a crime is going to be committed, without more, is not sufficient to make a person guilty of that crime" given the evidence was susceptible to the inference that "the defendant knew the robbery was to take place but did not aid in it"); *State v. Zeigler,* 364 S.C. 94, 610 S.E.2d 859 (Ct.App.2005) (holding "mere presence" charge was sufficient where charge included an instruction on "mere knowledge" in addition to an explanation of aiding and abetting and the requisite intent element); *State v. Staten,* 364 S.C. 7, 41, 610 S.E.2d 823, 840 (Ct.App.2005) (concluding the following charge sufficiently covered the law on mere presence and knowledge: "To be liable as an accomplice, the defendants must have knowledge of the principal's criminal conduct. Now, mere presence at the scene of the crime is not sufficient to establish ... guilt as an accomplice."), *vacated in part by,* 374 S.C. 9, 647 S.E.2d 207 (2007) (vacating Court of Appeals' analysis regarding *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)).

Despite this omission, the Court of Appeals found it to be "implicit" in the judge's instruction. Although we agree with the Court of Appeals' ultimate decision that the trial judge's failure to charge this requested instruction was not fatal to the entire charge, we are disturbed by the use of the term "implicit." We believe that to require jurors to delve into and interpret a judge's "implicit" instruction is contrary to the purpose of a trial judge being an instructor of the law. If this were the case, the burden would effectively shift from

the trial judge, as the instructor of the law, to the jury to discover the "hidden" meaning in a judge's charge.

Instead, we find the trial judge's explicit instruction regarding the necessary element of "intent," sufficiently covered the substance of Mattison's "mere knowledge" request and, thus, there was no error. This principle has been explained as follows:

For a person who has not actually committed the homicidal act to be regarded as a participant in a homicide, he or she must have aided, abetted, assisted, encouraged, or advised the killing. Also, the courts have required that the **alleged accomplice must have acted with the intention of encouraging and abetting the commission of the homicide,** or, at least that the commission of the murder by the principal must have been a reasonably foreseeable consequence of the defendant's actions.

40 Am. Jur. 2d *Homicide* § 26 (2010) (emphasis added); *see* 40 C.J.S. *Homicide* § 30 (2010) ("To be guilty as an accomplice to homicide, a defendant must have acted with the state of mind required for guilt.").

Applying the above-referenced principle, we conclude the judge's "intent" instruction in conjunction with his instruction regarding each element of the offenses [3] and his instruction that the jury find "beyond a reasonable doubt that the homicide was the probable and natural consequence of the acts which was done in pursuit to the common design" was substantially correct and adequately covered the applicable law.

Finally, in view of the jury's verdict, we believe the jurors understood this portion of the charge. More specifically, the jury convicted Mattison only of Jorge's murder and ABWIK as to Jose. According to Jose's testimony, Mattison was present during these crimes and actually aided Ervin when he

---

**3.** *See* S.C.Code Ann. § 16–3–10 (2003) (Murder is statutorily defined as "the killing of any person with malice aforethought, either express or implied."); *Kelsey*, 331 S.C. at 62, 502 S.E.2d at 69 (" 'Malice' is the wrongful intent to injure another and indicates a wicked or depraved spirit intent on doing wrong."); *Foust*, 325 S.C. at 15, 479 S.E.2d at 51 (analyzing requisite intent for ABWIK and concluding that in order to establish the charge of ABWIK "it is sufficient if there is shown some general intent, such as that heretofore applied in cases of murder in this State").

asked for Mattison's assistance. Jose further testified that a shot was fired from Mattison's direction during his and Jorge's struggle with Ervin over the weapon.

The jury, however, was unable to reach a verdict as to Roberto's murder. According to Jose, Mattison was with him at the time Roberto was shot. Thus, the jury's decision would appear to discount Mattison's concern that he was convicted based on "mere knowledge" or simply "prior knowledge." Instead, the jury arguably applied the judge's instruction regarding the requisite "intent" and, as a result, convicted Mattison of the applicable charges.

### III. Conclusion

In conclusion, we find the trial judge's instruction: (1) was confusing and contradictory with respect to an explanation of "mere presence;" (2) omitted an express instruction regarding "mere association;" and (3) omitted an express instruction regarding "mere knowledge." However, when the trial judge's instruction is read as a whole we find it adequately covered the law and sufficiently covered the substance of Mattison's requests to charge.

We modify the portion of the Court of Appeals' decision regarding the use of the term "implicit." In view of this modification, our decision should dispel any inference that a trial judge's general instruction is necessarily sufficient to cover a defendant's specific request to charge a correct statement of the law. Rather, we would urge trial judges to carefully consider charging a request to charge that is factually accurate and a correct statement of the law.

Based on the foregoing, the decision of the Court of Appeals is

**AFFIRMED AS MODIFIED.**

TOAL, C.J., KITTREDGE, J., and Acting Justices JAMES E. MOORE and R. KNOX McMAHON, concur.