# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Damien Inman, Appellant.

Appellate Case No. 2011-193887

————————

Appeal From Dillon County
Thomas A. Russo, Circuit Court Judge

————————

Opinion No. 27402
Heard March 4, 2014 – Filed June 18, 2014

————————

## REVERSED AND REMANDED

————————

Appellate Defender Susan Barber Hackett, of Columbia,
for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy
Attorney General John W. McIntosh, Senior Assistant
Deputy Attorney General Donald J. Zelenka, all of
Columbia, and Solicitor William B. Rogers, Jr., of
Bennettsville, for Respondent.

————————

**CHIEF JUSTICE TOAL:**      Damien Inman (Appellant) was convicted and
sentenced to life without the possibility of parole (LWOP) for the robbery,
kidnapping, and murder of Mary Alice Stutts.[1]  Appellant was seventeen years old

———————————
[1] Specifically, the circuit court sentenced Appellant to LWOP for both murder and

at the time of the crimes.  On appeal, Appellant challenges his convictions on several bases, including that the circuit court improperly granted the State's motion pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), after Appellant offered a race-neutral explanation for striking a particular juror.  We reverse and remand the case for a new trial.

## FACTS/PROCEDURAL BACKGROUND

Prior to the start of Appellant's trial, the circuit court required the State and Appellant to select three separate juries to hear Appellant's case due to Appellant's alleged racial bias in exercising his peremptory strikes.  For example, during the first jury selection, not including strikes for alternate jurors, Appellant used his peremptory strikes against seven white jurors and two black jurors, and the State raised *Batson* challenges to six of the seven white jurors struck by Appellant.

One of these six jurors was Juror 60, a white male self-employed as a farmer.  Appellant's counsel explained that she struck Juror 60 based on his occupation:

> [APPELLANT'S COUNSEL]:  In terms of [Juror] 60, he's a farmer.  Your Honor, just in terms of education.  Forensics is going to be introduced . . . .
>
> THE COURT:  Well, what was his level of education?
>
> [APPELLANT'S COUNSEL]:  Well, based on the fact that he was a farmer, Your Honor.  I wanted someone in a more sophisticated occupation.
>
> THE COURT:  I graduated from law school with a farmer.  Because someone's a farmer, they're not educated?
>
> [APPELLANT'S COUNSEL]:  Your Honor, it was based on his employment.
>
> THE COURT:  All right.

---

first-degree burglary, thirty years for kidnapping, thirty years for armed robbery, ten years for grand larceny, and five years apiece for criminal conspiracy and possession of a weapon during the commission of a violent crime, the sentences all to run consecutively.

The circuit court then had Appellant's counsel state her rationale for striking the other contested jurors and requested the State respond. The solicitor conceded the rationale for striking one juror was race-neutral; however, as to the other five contested jurors—including Juror 60—the solicitor simply said:

> All of the other [jurors], *I would say were very pretext* [sic]. Don't think they're race neutral reasons as recognized by the State of South Carolina for a peremptory challenge to a juror and absent that non-pretextural reason, we would submit that the jury be redrawn and that those individuals be returned to the jury pool. And that basically *the defense has failed to meet its burden* of showing race neutral or pretextural reason for having struck those jurors.

(Emphasis added). Appellant's counsel responded by stating that "[n]one of the information that I provided to Your Honor was based on any kind of race or gender excuse . . . . [I]f you were to look at individuals that I did strike . . . , [they were] all of different races, different ages."

> In making its ruling, the circuit court stated, in relevant part:

> And as far as [J]uror 60, the juror's a farmer and you based that on the fact that farmers are not educated . . . .

> . . .

> I'm going to grant the State's motion based on those three individuals jurors numbers 17, 60, and 166 *that the reasons given I don't believe are sufficient* . . . . [J]urors 17, 60, and 166 should those names be called again would not be subject to being struck by the defense based on the [c]ourt's ruling.[2]

(Emphasis added).

Because of the circuit court's ruling during the first jury selection, Appellant was unable to strike Juror 60 from the third and final jury drawn for his case, and Juror 60 served as the jury foreman at Appellant's trial. The jury ultimately

---

[2] "It is within the trial judge's discretion to prohibit a strike against a [juror] previously struck in violation of *Batson*." *State v. Ford*, 334 S.C. 59, 63 n.4, 512 S.E.2d 500, 503 n.4 (1999) (citing *State v. Franklin*, 318 S.C. 47, 456 S.E.2d 357 (1995)).

convicted Appellant of all of the crimes on which the State indicted him.

Appellant appealed his convictions, and this Court certified the appeal pursuant to Rule 204(b), SCACR.

## ISSUE

Whether the circuit court inappropriately left the burden of persuasion on the party opposing the *Batson* motion to show that a peremptory strike was not racially discriminatory?[3]

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Wilson*, 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001). A court is "bound by the trial court's factual findings unless they are clearly erroneous." *Id.* at 6, 545 S.E.2d at 829; *see also State v. Edwards*, 384 S.C. 504, 508, 509, 682 S.E.2d 820, 822, 823 (2009); *State v. Haigler*, 334 S.C. 623, 630, 515 S.E.2d 88, 91 (1999) ("The trial court's findings regarding purposeful discrimination are accorded great deference and will be set aside on appeal only if clearly erroneous.").

## ANALYSIS

"The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution[4] prohibits the striking of a [juror] on the basis of race or gender." *McCrea v. Gheraibeh*, 380 S.C. 183, 186, 669 S.E.2d 333, 334 (2008) (citing *State v. Shuler*, 344 S.C. 604, 615, 545 S.E.2d 805, 810 (2001)); *see also Batson*, 476 U.S. at 89. The United States Supreme Court has set forth a three-step

---

[3] Appellant raises several other issues on appeal, including an evidentiary challenge to the admission of an out-of-court identification of Appellant, and three challenges to the sentences imposed on him. One of his sentencing challenges involves an identical argument to that he raised as a Petitioner in *Aiken v. Byars*, No. 2012-213286 (considering the import of *Miller v. Alabama*, 132 S. Ct. 2455 (2012), on juvenile LWOP sentences in South Carolina), which is currently pending before this Court. However, because the *Batson* issue is dispositive, we need not reach these issues. *Wilkinson ex rel. Wilkinson v. Palmetto State Transp. Co.*, 382 S.C. 295, 307, 676 S.E.2d 700, 706 (2009) (finding that an appellate court need not discuss remaining issues when determination of prior issue is dispositive).

[4] U.S. Const. amend. XIV, § 1.

inquiry for evaluating whether a party executed a peremptory challenge in a manner which violated the Equal Protection Clause. *See Purkett v. Elem*, 514 U.S. 765, 767–68 (1995).

> First, the [party asserting the *Batson*] challenge must make a prima facie showing that the challenge was based on race. If a sufficient showing is made, the trial court will move to the second step in the process, which requires the [party opposing the *Batson*] challenge to provide a race neutral explanation for the challenge. If the trial court finds that burden has been met, the process will proceed to the third step, at which point the trial court must determine whether the [party asserting] the challenge has proved purposeful discrimination. The ultimate burden always rests with the [party asserting the *Batson* challenge] to prove purposeful discrimination.

*State v. Giles*, 407 S.C. 14, ---, 754 S.E.2d 261, 263 (2014) (internal citations omitted); *see also Snyder v. Louisiana*, 552 U.S. 472, 476–77 (2008) (quoting *Miller-El v. Dretke*, 545 U.S. 231, 277 (2005)).[5]

Step two of the analysis is perhaps the easiest step to meet as it does not require that the race-neutral explanation be persuasive, or even plausible. *Purkett*, 514 U.S. at 768; *Randall v. State*, 716 So. 2d 584, 588 (Miss. 1998). The explanation must only be "clear and reasonably specific such that the [party asserting the *Batson* challenge] has a full and fair opportunity to demonstrate pretext in the reason given and the trial court to fulfill its duty [in step three] to assess the plausibility of the reason in light of all the evidence with a bearing on it." *Giles*, 407 S.C. at ---, 754 S.E.2d at 265; *see., e.g.*, *id.* at ---, 754 S.E.2d at 262, 265–66 (finding that a defendant's explanation that he "did not feel the [struck] jurors were right for the jury," while "technically, semantically and intellectually racially neutral," would not allow the circuit court to "assess the plausibility of the proffered reason for striking the potential jurors").

In contrast, step three of the above analysis requires the court to carefully evaluate whether the party asserting the *Batson* challenge has proven racial discrimination by demonstrating that the proffered race-neutral reasons are mere pretext for a discriminatory intent. *State v. Green*, 655 So. 2d 272, 290 (La. 1995); *see also Batson*, 476 U.S. at 93–94 (stating that the court must consider "the

---

[5] Neither party disputes that the State made a prima facie showing of discrimination under step one of the above analysis.

totality of the relevant facts," including both direct and circumstantial evidence). During step three, the party asserting the *Batson* challenge should point to direct evidence of racial discrimination, such as showing that the opponent struck a juror for a facially neutral reason but did not strike a similarly-situated juror of another race. *Edwards*, 384 S.C. at 508–09, 682 S.E.2d at 822; *see also Haigler*, 334 S.C. at 629, 515 S.E.2d at 91. In doing so, the party proves that the "originally neutral reason was . . . a pretext because it was not applied in a neutral manner." *State v. Oglesby*, 298 S.C. 279, 281, 379 S.E.2d 891, 892 (1989).[6]

---

[6] The party asserting the *Batson* challenge may also point to circumstantial evidence of racial discrimination, such as a "pattern" of strikes against jurors of a particular race, particularly when the number of strikes exercised against that race is disproportionate to the race's representation among the jury pool. *Huntley v. State*, 627 So. 2d 1013, 1015 (Ala. 1992) (citing *Ex parte Branch*, 526 So. 2d 609, 623–24 (Ala. 1987)); *see also London v. State*, 125 S.W.3d 813, 817 (Ark. 2003); *Capitol Hill Hosp. v. Baucom*, 697 A.2d 760, 765–66 (D.C. 1997) (Ruiz, J., concurring); *Tursio v. United States*, 634 A.2d 1205, 1210–12 (D.C. 1993); *State v. Murphy*, 747 N.E.2d 765, 787 (Ohio 2001); *cf. Batson*, 476 U.S. at 97 (finding that a "'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination" in step one of the analysis); *Robinson v. United States*, 878 A.2d 1273, 1283 (D.C. 2005) (same). However, such statistical evidence, standing alone, is not sufficient to establish purposeful discrimination. *Ford*, 334 S.C. at 66, 512 S.E.2d at 504 (finding that a criminal defendant's use of twelve of his thirteen strikes to strike white jurors did not demonstrate, by itself, that the defendant had a discriminatory intent). Rather, the statistical evidence must be paired with some other evidence of discrimination, such as direct evidence of other jurors being struck for pretextual reasons. *Miller-El v. Cockrell*, 537 U.S. 322, 331–35, 341 (2003) (comparing the percentage of strikes used on black jurors and white jurors and finding that, in conjunction with other direct evidence, a *Batson* violation had occurred); *Yancey v. State*, 813 So. 2d 1, 8 (Ala. Crim. App. 2001) (holding that the State's use of twelve of its fifteen strikes to strike black jurors, when paired with other direct evidence of discrimination, demonstrated that the trial court's rejection of a *Batson* challenge was clear error).

The circuit court must also consider the credibility and demeanor of the party opposing the *Batson* challenge when that party sets forth the race-neutral explanations in step two. *Snyder*, 552 U.S. at 477; *Ford*, 334 S.C. at 65, 512 S.E.2d at 503.

We find that, with respect to the *Batson* hearing conducted for Juror 60, the circuit court committed legal error by improperly placing the ultimate burden of persuasion on Appellant. During step two of the hearing, Appellant's counsel stated that she struck Juror 60 because of his employment as a farmer. Thus, Appellant met his minimal burden to produce a valid, race-neutral reason for striking a prospective juror. *State v. Ford*, 334 S.C. 59, 65, 512 S.E.2d 500, 504 (1999) (holding that employment is sufficiently race-neutral to meet the burden of production during step two of a *Batson* hearing). At that point, the circuit court should have shifted the ultimate burden of persuasion back to the State to show that the proffered reason was pretextual. *State v. Evins*, 373 S.C. 404, 415, 645 S.E.2d 904, 909 (2007).

Instead, the circuit court—and not the State—challenged the sufficiency of Appellant's counsel's explanation, arguing to Appellant's counsel that farmers could be highly educated and sophisticated individuals. Further, when the State was given a chance to respond to the proffered race-neutral reason for striking Juror 60, it declared only that striking Juror 60 for his employment was "very pretext" [sic]. In light of the facially race-neutral explanation for striking Juror 60, the State's conclusory statement that striking Juror 60 was pretextual failed to carry its burden of persuasion. Thus, in finding that Appellant's counsel's proffered rationale was "not sufficient," the circuit court inappropriately left the burden of persuasion on Appellant's counsel to prove that her explanation was not pretextual instead of shifting the burden to the State to prove why the explanation *was* pretextual. *See Giles*, 407 S.C. at ---, 754 S.E.2d at 263.

During its oral argument before this Court, the State asserted two compelling arguments in support of the circuit court's ruling on the *Batson* motion involving Juror 60. First, the State pointed to direct evidence that Appellant's strike of Juror 60 was racially motivated, explaining that Appellant did not likewise strike Juror 226, a black farmer, from the same jury in which he struck Juror 60. *See Oglesby*, 298 S.C. at 281, 379 S.E.2d at 892. Second, the State argued that Appellant struck a disproportionate number of white jurors in all three of the juries selected to try his case.[7]

---

[7] The Record demonstrates that slightly more than half of the jury pool was black. During the first jury selection, the parties selected nine black jurors, three white jurors, and two white alternate jurors. Including the strikes for alternate jurors, Appellant struck eight white jurors and three black jurors.

However, because the State did not raise these arguments during the *Batson* hearing, we find these post hoc justifications untimely. *Evins*, 373 S.C. at 418, 645 S.E.2d at 910. Regardless of their veracity in hindsight, neither explanation helped the State carry its burden of persuasion *at the time of the hearing*, and the circuit court therefore improperly granted the State's *Batson* motion and denied Appellant his right to exercise his peremptory challenges.

When an appellate court finds that the circuit court improperly granted a *Batson* motion, and "one of the disputed jurors is seated on the jury, then the erroneous *Batson* ruling has tainted the jury and prejudice is presumed in such cases 'because there is no way to determine with any degree of certainty whether a defendant's right to a fair trial by an impartial jury was abridged.'" *Edwards*, 384 S.C. at 509, 682 S.E.2d at 823 (quoting *State v. Rayfield*, 369 S.C. 106, 114, 631 S.E.2d 244, 248 (2006)). "The proper remedy in such cases is the granting of a new trial." *Id.*; *see also Ford*, 334 S.C. at 66, 512 S.E.2d at 504 ("[B]ecause appellant established he was wrongfully denied the right to exercise a peremptory challenge, we reverse his conviction."). Accordingly, we reverse Appellant's convictions and grant Appellant a new trial.

CONCLUSION

For the foregoing reasons, we reverse Appellant's convictions and remand this case for a new trial.

**REVERSED AND REMANDED.**

**BEATTY, KITTREDGE and HEARN, JJ., concur. PLEICONES, J., concurring in result only.**

---

During the second jury selection, the parties selected nine black jurors, three white jurors—one of whom the court prohibited Appellant from striking due to a *Batson* violation during the first jury selection—and two black alternate jurors. Including the strikes for alternate jurors, Appellant struck nine white jurors and one black juror.

During the final jury selection, the parties selected five black jurors, seven white jurors—four of whom the court prohibited Appellant from striking due to *Batson* violations during the first two jury selections—and two black alternate jurors. Including the strikes for alternate jurors, Appellant struck nine white jurors and three black jurors.