# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Mitchell Monroe Weatherall, Appellant.

Appellate Case No. 2017-002447

---

Appeal From Horry County
Benjamin H. Culbertson, Circuit Court Judge

---

Opinion No. 5763
Submitted June 1, 2020 – Filed August 19, 2020

---

**AFFIRMED**

---

J. Falkner Wilkes, of Greenville, for Appellant.

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, and Senior
Assistant Attorney General J. Anthony Mabry, all of
Columbia; and Solicitor Jimmy A. Richardson, II, of
Conway, for Respondent.

---

**LOCKEMY, C.J.:** Mitchell Weatherall appeals his conviction for murder and his
sentence of life imprisonment. Weatherall argues the trial court abused its
discretion by (1) denying his *Batson*[1] challenges, which were based on race and

---

[1] *Batson v. Kentucky*, 476 U.S. 79, 92-95 (1986) (holding that racial discrimination
in jury selection offends the Equal Protection Clause of the Fourteenth Amendment
and outlining the steps to challenge racial discrimination in jury selection).

sexual orientation, and (2) refusing to charge section 17-25-65 of the South Carolina Code (2014)[2] because an imprisoned State's witness testified he did not expect to receive any benefit from his testimony. We affirm.

## FACTS/PROCEDURAL HISTORY

During voir dire, the court asked, "Is there any member of the jury panel who feels that a person's sexual orientation would affect your ability to be fair and impartial to that person? If so, please stand." No one stood in response. During jury selection, the State excused Juror 191, a black female juror. The State presented Juror 244, a black male, who was seated on the jury. The State then excused Juror 397.

Weatherall objected to the State striking the only black female juror. The Court stated "You know, there's a whole lot of leeway. I know that if—if there had been more black females called and struck, you could address it, but since there was only one called—[the State], what is the basis for striking Juror 191?" The State explained its records indicated Juror 191 had a prior conviction. Juror 191 informed the State she did not have a conviction. The State explained it was concerned Juror 191 had a prior conviction because she did not have a driver's license, she only had a personal ID, which it believed was indicative of a possible conviction. The trial court inquired if Weatherall wanted to reply to the State's explanation and he responded he did not.

Weatherall then challenged the striking of Juror 397 on the grounds of sexual orientation, arguing,

> I might be wrong, but I don't think the Supreme Court has recognized sexual orientation as a protected class, but one of the things that's involved in this case, and I believe we've made it obvious to this court and to the potential jury panel by our questions, is that one of the witnesses for the State and one of our witnesses, or client is a homosexual, and we believe that the only reason the [State] struck Juror Number 397 was because of that juror's sexual orientation.

---

[2] Section 17-25-65 permits, on motion from the State, the reduction of a prisoner's sentence if the prisoner provides substantial assistance to the State.

The trial court denied the challenge, stating sexual orientation was not a protected class. Weatherall did not offer any evidence of Juror 397's sexual orientation and did not attempt to proffer any evidence to that effect. The trial court asked the State if it wanted to put its reason for striking Juror 397 on the record. The State responded it "didn't know [the juror] was gay . . . it wasn't in any of our notes. I had no idea he was gay and I don't know what evidence we have that he was . . . homosexual." The trial court stated the State was not required to put a reason on the record unless it wanted to. The State responded that Juror 397 "appeared completely disinterested, and when he stood up there, he looked completely disinterested." The trial court denied the challenge as to Juror 397 and found there was a justifiable reason for striking Juror 191.

At trial, Norma Davis, the owner of the Atlantic View Motel, testified Weatherall and Helbert Woodbury (Victim) checked into one of its rooms for a week. Melissa Baines, a member of the motel's housekeeping staff, testified the guests broke the door to the room and she could not open it. She testified she found a broken bottle in the room and blood was soaked into the carpet and the bed.

Kelly Matteson, of the Myrtle Beach Police Department's crime scene unit, testified she processed the motel room and found blood on the bed, headboard, dresser, and wall. She testified the location of bloodstains in the room indicated the blood was cast off from a weapon used in the assault. Jennifer Bartman, an expert in DNA comparisons, testified the blood from the bed, carpet, and dresser matched Victim's DNA. Victim suffered multiple lacerations on the back of his head, an underlying blunt force injury that fractured his skull, and defensive wounds on his arms and hands. Victim died from a skull fracture and brain injury.

Investigators found Victim's body concealed off of a dirt access trail. The State published a surveillance video to the jury. Angie Gunter, the manager at the Atlantic View Motel, explained the video showed someone carrying a body out of a room and putting it in a car. Weatherall admitted in his opening statement that the video showed him and a man named Joey Garsow carrying the Victim's body to the car.

Tonya Wedlock, Weatherall's friend, testified Weatherall and Garsow were lovers. Wedlock stated Weatherall met Victim through Craigslist, and Victim took a bus to Myrtle Beach to receive sexual favors from Weatherall. She recalled that once Victim was in Myrtle Beach, Weatherall called a dealer in order to buy drugs. Wedlock testified that later that week, Weatherall asked to use her car to take Victim back to the bus station. Wedlock explained she, Weatherall, and Garsow

drove to the motel, where Weatherall asked her to wait outside. She testified she walked to the corner to drink and was unable to see who came in or out of the room. Wedlock identified herself, Garsow, and Weatherall in the surveillance video.

Marcus Bell, an inmate at the South Carolina Department of Corrections, testified he was Weatherall's roommate for two weeks in jail. He explained Weatherall told him Victim and Weatherall had argued about money to purchase drugs. Bell stated Weatherall said he got angry with Victim and hit Victim across the head with a bottle. Bell testified he did not expect anything from the State in exchange for his testimony against Weatherall. When asked why he wrote a letter to the State with this information, he stated,

> Well, at first I'm going to be totally honest with you . . . I felt that possibly it could help me when I was facing time, but then I later on found out that it didn't help me. And, as the time went on down the road, I figured out that it was pretty much the right thing to do because of the simple fact that it could've been my dad, it could've been my brother, it could've been my, you know, I'd want somebody to do it for me . . . but this me being here today don't help me none . . . .

Weatherall requested the trial court charge the jury with section 17-25-65. He argued that the law provided Bell could have his prison sentence reduced if he testified. Weatherall stated, "[S]ince [Bell] testified he wasn't expecting anything from the [State], I ask you to charge this because this would be a fair statement of what he's gonna get." The trial court denied Weatherall's request. The trial court charged the jury that it had the responsibility to "determine the credibility of witnesses who have testified" and that it "may consider whether any witness ha[d] exhibited . . . any interest, bias, prejudice, or other motive in this case." In addition, the trial court instructed the jurors that they could consider a witness's past criminal record "in determining the witness'[s] credibility or believability." The jury found Weatherall guilty of murder, and the trial court sentenced him to life imprisonment. This appeal followed.

## ISSUE ON APPEAL

1. Did the trial court err by denying Weatherall's *Batson* challenge when the State struck the only African American juror called?

2.  Did the trial court err by denying Weatherall's *Batson* challenge based on sexual orientation?

3.  Did the trial court err by denying Weatherall's requested jury charge on section 17-25-65 to show potential bias on the part of the State's key witness?

4.  Do any of the court's errors, or a combination thereof, require a reversal of Weatherall's conviction and sentence?

## STANDARD OF REVIEW

"In criminal cases, appellate courts sit to review errors of law only, and are therefore bound by the trial court's factual findings unless clearly erroneous." *State v. Robinson*, 410 S.C. 519, 526, 765 S.E.2d 564, 568 (2014).  An appellate court's review "is limited to determining whether the trial court abused its discretion." *State v. Edwards*, 384 S.C. 504, 508, 682 S.E.2d 820, 822 (2009).  "The trial court's findings regarding purposeful discrimination are accorded great deference and will be set aside on appeal only if clearly erroneous." *State v. Blackwell*, 420 S.C. 127, 148, 801 S.E.2d 713, 724 (2017) (quoting *State v. Haigler*, 334 S.C. 623, 630, 515 S.E.2d 88, 91 (1999)).

"A trial court's decision regarding jury charges will not be reversed whe[n] the charges, as a whole, properly charged the law to be applied." *State v. Rye*, 375 S.C. 119, 123, 651 S.E.2d 321, 323 (2007).  "An appellate court will not reverse the trial [court's] decision regarding a jury charge absent an abuse of discretion." *State v. Mattison*, 388 S.C. 469, 479, 697 S.E.2d 578, 584 (2010).  "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *State v. Pittman*, 373 S.C. 527, 570, 647 S.E.2d 144, 166-67 (2007).

## LAW/ANALYSIS

### I.  *Batson* Challenges[3]

Weatherall argues the trial court failed to address the *Batson* challenge requirements for Juror 191.  Weatherall further argues the trial court failed to reach

---

[3] We address both *Batson* challenges in the same section in the interest of conciseness.

the second step of the *Batson* analysis as to Juror 397 because it ruled as a matter of law that *Batson* does not extend to strikes based on sexual orientation. We disagree.

"The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the striking of a venireperson on the basis of race." *Haigler*, 334 S.C. at 628, 515 S.E.2d at 90. "The purposes of *Batson* and its progeny are to protect the defendant's right to a fair trial by a jury of the defendant's peers, protect each venireperson's right not to be excluded from jury service for discriminatory reasons, and preserve public confidence in the fairness of our system of justice . . . ." *Id.* (footnote omitted). "The United States Supreme Court has set forth a three-step inquiry for evaluating whether a party executed a peremptory challenge in a manner which violated the Equal Protection Clause." *State v. Inman*, 409 S.C. 19, 26, 760 S.E.2d 105, 108 (2014).

> First, the [party asserting the *Batson*] challenge must make a prima facie showing that the challenge was based on race. If a sufficient showing is made, the trial court will move to the second step in the process, which requires the [party opposing the *Batson*] challenge to provide a race neutral explanation for the challenge. If the trial court finds that burden has been met, the process will proceed to the third step, at which point the trial court must determine whether the [party asserting] the challenge has proved purposeful discrimination. The ultimate burden always rests with the [party asserting the *Batson* challenge] to prove purposeful discrimination.

*Id.* (alterations in original) (quoting *State v. Giles*, 407 S.C. 14, 18, 754 S.E.2d 261, 263 (2014)). In order to establish a prima facie case of discrimination, the challenging party must show (1) that the prospective juror was a member of a protected group; (2) that the State exercised peremptory challenges to remove members of the group from the jury; and (3) that these facts and other relevant circumstances raise an inference that the State used peremptory challenges to exclude the prospective juror from the jury on account of their group. *See State v. Oglesby*, 298 S.C. 279, 280, 379 S.E.2d 891, 891 (1989).

"Step two of the analysis is perhaps the easiest step to meet as it does not require that the race-neutral explanation be persuasive, or even plausible." *Blackwell*, 420 S.C. at 147, 801 S.E.2d at 723 (quoting *Inman*, 409 S.C. at 26, 760 S.E.2d at 108).

"Whether a *Batson* violation has occurred must be determined by examining the totality of the facts and circumstances in the record." *Id.* at 148, 801 S.E.2d at 724 (quoting *State v. Shuler*, 344 S.C. 604, 615, 545 S.E.2d 805, 810 (2001)).

> Pretext generally will be established by showing that similarly situated members of another race were seated on the jury. Under some circumstances, the race-neutral explanation given by the proponent may be so fundamentally implausible that the [trial court] may determine, at the third step of the analysis, that the explanation was mere pretext even without a showing of disparate treatment.

*Haigler*, 334 S.C. at 629, 515 S.E.2d at 91 (quoting *Payton v. Kearse*, 329 S.C. 51, 55, 495 S.E.2d 205, 208 (1998)). The *Batson* analysis "focuses upon a party's knowledge of a potential juror and reason for exercising a peremptory challenge." *Id.* at 630, 515 S.E.2d at 91.

Race

As an initial matter, Weatherall contends Juror 191 was the only black juror called; however, this assertion was not supported by the record because Juror 244, a black male, was seated on the jury. Weatherall argues the trial court erred when it stated, "You know, there's a whole lot of leeway. I know that it – if there had been more black females called and struck, you could address it, but since there was only one called." However, the trial court did not rule on the challenge at that time. The trial court instead commented on the difficulty Weatherall faced in showing pretext given so few black jurors were in the jury pool; however, the trial court permitted a full *Batson* analysis.

We find Weatherall failed to prove the State engaged in purposeful discrimination based on race during the jury selection process. *See Inman*, 409 S.C. at 26, 760 S.E.2d at 108 ("The ultimate burden always rests with the [party asserting the *Batson* challenge] to prove purposeful discrimination." (alteration in original) (quoting *Giles*, 407 S.C. at 18, 754 S.E.2d at 263)). At trial, the State explained it struck Juror 191 because it received an NCIC report that indicated the juror had a disqualifying prior conviction. Prior to voir dire, the juror argued she did not have the conviction. The State further expressed its concern she presented an identification card instead of a driver's license, which it asserted may have been indicative of a prior conviction and a suspended license. The State explained it

struck Juror 191 based on her identification card and out of an abundance of caution.  The State's representations concerning the contents of the NCIC report and concern over the identification card were race-neutral.

Importantly, when given the opportunity by the trial court, Weatherall failed to argue that the State's reason for striking Juror 191 was pretext or that there was disparate treatment at trial.  Thus, any argument regarding pretext or disparate treatment is not preserved on appeal.  *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693-94 (2003) ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial [court].  Issues not raised and ruled upon in the trial court will not be considered on appeal.").

On appeal, Weatherall asserts the State's basis for the strike was fundamentally implausible such that it showed purposeful discrimination without showing similarly situated members of the jury were treated differently.  We hold the trial court did not abuse its discretion because the record supports the trial court's finding that the State's concern over Juror 191's possible conviction was reasonable and not fundamentally implausible.  *See State v. Martinez*, 294 S.C. 72, 73, 362 S.E.2d 641, 642 (1987) (providing a juror's "*possible* criminal record" was a sufficient racially neutral explanation for striking a juror (emphasis added)).  Thus, the trial court did not err in denying Weatherall's *Batson* challenge as to Juror 191.

Sexual Orientation

As to Juror 397, Weatherall failed to establish a prima facie case to the trial court.  *See Oglesby*, 298 S.C. at 280, 379 S.E.2d at 891 (stating that to establish a prima facie case the challenging party must show (1) that the prospective juror was a member of a protected group, (2) that the State exercised peremptory challenges to remove members of the group from the jury, and (3) that the relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude the prospective juror from the jury on account of their group).

At trial, Weatherall argued the State struck Juror 397 because of his sexual orientation, and the trial court denied the challenge before reaching the second step of the *Batson* analysis.  Although the trial court permitted the State the opportunity to offer an explanation for the record, the court stated it would not require one, finding sexual orientation was not a protected class and therefore not subject to a *Batson* analysis.  Nevertheless, it was Weatherall's burden to establish the prima facie case to the trial court, which he failed to do.  *See Batson*, 476 U.S. at 94 (providing the burden is on the party asserting the challenge to prove the prima

facie case). First, Weatherall failed to provide any evidence of Juror 397's sexual orientation or that the State was aware of Juror 397's sexual orientation. *See Haigler*, 334 S.C. at 630, 515 S.E.2d at 91 (providing the *Batson* analysis "focuses upon a party's knowledge of a potential juror and reason for exercising a peremptory challenge"). Second, because Weatherall failed to provide any evidence that the juror was gay or that the State knew the juror's sexual orientation, he also failed to provide any evidence the State exercised the peremptory challenge with the purpose to remove homosexual jurors from the venire. Weatherall did present some evidence that the relevant circumstances would have raised the inference of exclusion based on sexual orientation because the case involved a gay defendant and victim. Nevertheless, because Weatherall failed to establish the first two elements, his showing was insufficient to establish a prima facie case of discrimination. *See Inman*, 409 S.C. at 26, 760 S.E.2d at 108 ("*If* a sufficient showing is made, the trial court will move to the second step in the process . . . ." (emphasis added) (quoting *Giles*, 407 S.C. at 18, 754 S.E.2d at 263)). Based on the foregoing, Weatherall failed to prove the prima facie case; thus, we affirm the trial court's denial of Weatherall's *Batson* challenge.

## II. Jury Charge

Weatherall argues the trial court abused its discretion by refusing to charge section 17-25-65. Weatherall asserts that because Bell could have benefited under section 17-25-65 and received a reduced sentence, the trial court erred in failing to charge the jury on the statute. We disagree.

"A jury charge is correct if, when the charge is read as a whole, it contains the correct definition and adequately covers the law." *State v. Adkins*, 353 S.C. 312, 318, 577 S.E.2d 460, 464 (Ct. App. 2003). "In reviewing jury charges for error, we must consider the court's jury charge as a whole in light of the evidence and issues presented at trial." *Id.* at 318, 577 S.E.2d at 463. "The law to be charged must be determined from the evidence presented at trial." *State v. Cole*, 338 S.C. 97, 101, 525 S.E.2d 511, 512 (2000). "A jury charge that is substantially correct and covers the law does not require reversal." *Mattison*, 388 S.C. at 478, 697 S.E.2d at 583. "To warrant reversal, a trial [court's] refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant." *Id.* at 479, 697 S.E.2d at 583.

Section 17-25-65(A)(1) provides that "[u]pon the state's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after

sentencing, provided . . . substantial assistance in investigating or prosecuting another person . . . ."

We hold the trial court did not abuse its discretion by denying Weatherall's request to charge section 17-25-65. During direct examination, Bell stated he did not expect anything from the State in exchange for his testimony against Weatherall, but acknowledged that when he first wrote the letter to the State explaining what he knew, he had hoped to receive a reduced sentence. On cross-examination, Weatherall failed to question Bell about the provisions of section 17-25-65 or any of his expectations for his cooperation with the State. Because section 17-25-65 was never addressed during Bell's testimony, the evidence—or more accurately, the lack thereof—supported the trial court's refusal to give the requested charge. Further, viewing the jury instructions as a whole in light of the evidence and issues presented at trial, the trial court's instructions were substantially correct and covered the law. Therefore, we hold the trial court did not abuse its discretion by denying Weatherall's request to charge section 17-25-65. Because we find the trial court did not err, we do not address Weatherall's fourth issue regarding reversal of Weatherall's conviction.

**CONCLUSION**

Based on the foregoing, we find the trial court did not err by denying Weatherall's *Batson* challenges because Weatherall failed to establish a prima facie case for Juror 397 and failed to show the State's reason for striking Juror 191 was fundamentally implausible. We further find the trial court did not err by refusing to charge section 17-25-65 because it was not raised during trial. Accordingly, Weatherall's conviction is

**AFFIRMED.**[4]

**GEATHERS and HEWITT, JJ., concur**.

---

[4] We decide this case without oral argument pursuant to Rule 215, SCACR.